ROBERTA S. BINDER *vs.* EUGENE N. BINDER
(and a companion case).

Suffolk.   Middlesex. February 16, 1979. — June 15, 1979.

Present: ARMSTRONG, GREANEY, & PERRETTA, JJ.

*Divorce,* Alimony, Separation agreement, Modification of decree. *Contract,* Separation agreement. *Superior Court,* Jurisdiction. *Probate Court,* Jurisdiction.

On a husband's complaint seeking modification of the alimony provisions of a divorce decree the evidence, concerning mainly the effects of the husband's osteoarthritic condition on his earning potential as a surgeon, did not warrant a modification based on changes in the circumstances of the parties occurring after the decree was entered, where the husband's earnings were in fact undiminished and the record gave no indication that the husband's support obligation was determined other than with reference to his earnings at the time the decree was entered. [754-757]

Where support payments by a husband to his former wife were reduced by a Probate Court, pursuant to the husband's complaint for modification, the wife was entitled, by a contract action in the Superior Court, to enforce the higher level of support payments specified in a marital separation agreement between the parties which provided, by its terms, that its support provisions shall survive a subsequently entered divorce decree. [757-760]

A contempt proceeding by a former wife against her former husband in a Probate Court to enforce the support provisions of a divorce decree did not bar her subsequent contract action in the Superior Court to enforce the more favorable support provisions contained in a marital separation agreement between the parties which provided, by its terms, that such provisions shall survive a subsequently entered divorce decree. [760-762]

Separate actions in a Probate Court to enforce support provisions of a divorce decree and in the Superior Court to enforce payments provided under a marital separation agreement do not lead to double recovery for the plaintiff because the obligations, although enforced through separate causes of action, must, in the absence of provision to the contrary, be assumed to be concurrent and not cumulative. [762]

LIBEL for divorce filed in the Probate Court for the county of Middlesex on March 27, 1972.

Two complaints for contempt, filed on December 1, 1975, and a complaint seeking modification, filed on December 8, 1976, were heard by *Martin, J.*

CIVIL ACTION commenced in the Superior Court on March 2, 1977.

A motion for summary judgment was heard by *Linscott, J.*

*Murray P. Reiser* for the defendant.

*Larry C. Kenna* for the plaintiff.

ARMSTRONG, J. On March 22, 1972, the parties entered into a marital separation agreement by which the husband, a physician, agreed to pay the wife $300 a week for her support, so long as she should not remarry, and $75,000 as a property settlement, to be funded in part with proceeds of the sale of the marital home and the balance by instalments of $100 a week.[1] One clause provided that the parties should attempt to have the agreement incorporated into any divorce decree, but that, whether incorporated or not, the agreement would survive such a decree. A decree of divorce nisi was entered March 27, 1972, in the Probate Court for Middlesex County. It incorporated the agreement by reference, thus, in effect, ordering alimony in the amounts specified in the agreement. *Salvesen* v. *Salvesen*, 370 Mass. 608, 610 (1976).

---

[1] All but $5,000 of the proceeds from the sale of the home was to be paid to Mrs. Binder and credited against the $75,000 due her as property settlement. Dr. Binder was to execute a promissory note to her for the balance, payable at the rate mentioned in the text. On August 16, 1973, Dr. Binder executed and delivered the note, which was in the amount of $32,179.79.

On December 1, 1975, Mrs. Binder filed two complaints for contempt in the Probate Court, alleging that Dr. Binder was in arrears in his payments. The complaints were heard on two dates, but decision was delayed for reasons not here material. The next procedural step that concerns us occurred on December 8, 1976, when Dr. Binder filed a complaint for modification of his obligations under the divorce decree. The three complaints were heard together on January 5, 1977. The parties agreed that the arrearages at that time totalled $20,600. Evidence was offered, and accepted by the judge, that Dr. Binder's earning capacity as a surgeon had become impaired by an apparently progressive "osteoarthritic" condition affecting his knees and back, making surgery increasingly difficult for him. The judge also found that Dr. Binder had remarried shortly after the divorce decree became absolute and that he and his new wife, a flight attendant for an international airline, enjoyed a luxurious life style. The judge found that the first Mrs. Binder, the plaintiff, had adopted "a very conservative, almost Spartan life style" but had accumulated some $80,000 by conserving her assets. In the end, the judge concluded that the payments called for by the divorce decree were "unrealistically high" and entered a judgment (1) determining that arrearages were $20,600 as of January 5, 1977, and ordering that they be paid off at a rate of $50 per week until they and any additional arrearages to the date of judgment (February 14, 1977) should be paid in full, and (2) modifying the divorce decree by reducing the weekly support provision from $300 to $200 per week and by eliminating the requirement of further compliance with the property settlement provision (i.e., the $100 per week payment) other than payment of the arrearages to the date of judgment on the timetable stated. The judge explicitly stated, both in his findings and judgment, that he was modifying only the obligations imposed by the divorce decree and not the previously identical obligations imposed by the separation agreement.

Mrs. Binder then made two moves: She filed an appeal from the judgment entered in the Probate Court on the contempt and modification complaints, and she filed a contract action in the Superior Court (in Suffolk County) to recover the $20,600 arrearages. Dr. Binder answered that the judgment entered in the Probate Court in Mrs. Binder's action to recover the same arrearages operated either as res judicata or as a prior pending action to bar the Superior Court action. That contention was over-ruled, and Dr. Binder appealed from the ensuing judgment entered for Mrs. Binder for the arrearages. Mrs. Binder's appeal from the Probate Court judgment and Dr. Binder's appeal from the Superior Court judgment were consolidated for argument.

### THE PROBATE COURT JUDGMENT

Mrs. Binder's appeal from the judgment reducing Dr. Binder's obligations under the divorce decree is based on a contention that Dr. Binder failed to establish a change in the circumstances of the parties occurring since the entry of the decree nisi which would warrant a modification of the decree. Although the power of a Probate Court to modify an alimony judgment under G. L. c. 208, § 37, is "broad and general," *Whitney* v. *Whitney*, 325 Mass. 28, 31 (1949); *O'Brien* v. *O'Brien*, 325 Mass. 573, 576 (1950), it has nevertheless been held "repeatedly ... that no modification can be made unless the [party seeking modification] shows a change of circumstances since the entry of the earlier [judgment].... [T]he basis for this rule is sound. The parties have had their day in court and the issue ought not be relitigated unless there has been a change of circumstances after the entry of the original [judgment]." *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961). See also *Hinds* v. *Hinds*, 329 Mass. 190, 191 (1952); *Mead* v. *Mead*, 2 Mass. App. Ct. 338, 340 (1974). To pass on Mrs. Binder's contention, we do not confine ourselves to the facts found by the judge, which were not intended

by him as a report of material facts.[2] Contrast *Sodones* v. *Sodones*, 366 Mass. 121, 126-127 (1974). The evidence is before us (see note 2, *supra*); thus, all questions of fact, law and discretion are open to review, *Krokyn* v. *Krokyn*, 378 Mass. 206, 208 (1979), but the judge's findings, express or implied, will not be reversed unless clearly erroneous. *Mead* v. *Mead*, 2 Mass. App. Ct. at 339.

The judge's finding of changed circumstances was based mainly on evidence of Dr. Binder's osteoarthritic condition, which makes it difficult for him to bend over or to stay in a standing position for lengthy periods. The condition makes it difficult or impossible for him to do major surgery and has confined his surgical practice to minor procedures, a change which reflects itself in sharply reduced malpractice insurance premiums. Over the three years preceding the hearing on January 5, 1977, the emphasis of his practice shifted from surgery to forensic medicine, a field which Dr. Binder characterized as "less lucrative" than surgery. Time may prove the characterization to be correct; but the only concrete evidence of earnings before the judge was the individual and corporate tax returns filed by Dr. Binder for the years 1972, 1973, 1974, and 1975; and these do not show a decline in income, but, rather, a modest increase over the period, taking into account not only compensation paid directly to Dr. Binder by his corporation but also (1) the amounts paid into the pension fund, of which Dr. Binder is the largest single beneficiary, and (2) the increasing net worth of the corporation, Dr. Binder being its sole share-

---

[2] No request for findings was made by either party pursuant to Mass.R.Dom.Rel.P. 52(a) (1975), presumably because it was not until the final hearing on January 5, 1977, that a stenographer was appointed under Supplemental Rule 202 of the Probate Courts (1975). The judge stated at the end of his findings: "The foregoing is intended not as a report of material facts but only as background for the rationale of the [c]ourt's [j]udgments." After the appeals were claimed the parties prepared statements of the evidence introduced at two earlier hearings, which were approved (although somewhat ambiguously) by the judge. We have before us the statements of evidence, a transcript of the January 5, 1977, hearing, and the exhibits.

holder. We have not overlooked Dr. Binder's testimony that the rather sharp increase in the corporation's gross receipts in 1975 was due primarily to more efficient collection practices; but absent quantification that testimony does not warrant a finding that Dr. Binder's earnings are declining. Giving full effect to Dr. Binder's testimony that forensic medicine is "less lucrative" than surgery, there is at best evidence of a decline in Dr. Binder's earning potential, but not, so far at least, in his earnings; and, in the absence of evidence to the contrary, we can only assume that the support obligation imposed by the 1972 decree was determined with reference to Dr. Binder's actual earnings at that time and not in anticipation that his earnings would be sharply higher in the future.

The evidence does not show any other change of circumstances. That Dr. Binder's earnings may not be keeping pace with inflation (this is not clear from the evidence) is not determinative; inflation, as the judge pointed out, affects Mrs. Binder equally, if not more. There is no indication of relevant change in Mrs. Binder's circumstances; she is unemployable as a practical matter, and her savings are the result of the property settlement (the evidence indicates that roughly $53,000 has been paid thereon) and her frugal habits. She has had to use a portion of those savings since Dr. Binder, in the autumn of 1975, unilaterally cut payments to her from $400 per week to $100 per week. Assuming, without deciding, that Dr. Binder's voluntary financial contributions to the education of his sons (aged 23 and 25 at the time of the hearing) and the support of his aged father could justify reducing his legal obligation to support his wife where her circumstances had not changed, we find in the record no evidence that those contributions were not within the contemplation of the parties and the court at the time the separation agreement and the divorce decree were formulated, or even that the total of those contributions annually is larger now than it was then. On the record before us it cannot be found that those contributions

represent a change in circumstances warranting modification of the alimony provisions of the decree. The burden of proving such a change of circumstances was, of course, on Dr. Binder.

The judgment is accordingly reversed, and the contempt and modification cases are remanded to the Probate Court for further proceedings consistent with this opinion. Those proceedings may, in the discretion of the Probate Court, include the taking of testimony to determine whether Dr. Binder's complaint for modification is supported by change in the circumstances of the parties which have occurred since January 5, 1977. The evidence in the contempt proceedings should be reopened at least for the limited purpose of determining Dr. Binder's present ability to pay the arrearages, as in *Sodones* v. *Sodones*, 366 Mass. at 131. The judge may, in his discretion, reopen the contempt proceedings for the additional purpose of computing arrearages to the present.

*So ordered.*

## The Superior Court Judgment

The judgment entered in the Superior Court for the arrearages up to January 5, 1977, was based on the principle that the parties to a separation agreement may provide therein that the support provisions of the agreement shall survive a subsequently entered divorce judgment, whether incorporated therein or not, and that in such a case "[t]he agreement remains valid and may still be enforced by action at law after the [judgment]." *Schillander* v. *Schillander*, 307 Mass. 96, 98 (1940). Where the support provisions of the judgment incorporate or are otherwise identical to those of the agreement, and the party paying support seeks a reduction in his support obligations under the judgment, the agreement does not stand as a bar to such a reduction. *Wilson* v. *Caswell*, 272 Mass. 297

(1930). *Smith* v. *Smith,* 358 Mass. 551, 553 (1971). *Salvesen* v. *Salvesen,* 370 Mass. 608, 610-611 (1976). *Knox* v. *Remick,* 371 Mass. 433, 435 (1976). See also *Oakes* v. *Oakes,* 266 Mass. 150, 152 (1929). A reduction in the support mandated by the judgment is not incompatible with the agreement of the parties,[3] the higher level of support specified in the agreement still being enforceable by a contract action for any resulting deficiency. *Freeman* v. *Sieve,* 323 Mass. 652, 656-657 (1949). *Hills* v. *Shearer,* 355 Mass. 405 (1969). *Knox* v. *Remick,* 371 Mass. at 435. See *Welch* v. *Chapman,* 296 Mass. 487, 488 (1937); *Whitney* v. *Whitney,* 316 Mass. 367, 371 (1944); *Surabian* v. *Surabian,* 362 Mass. 342, 345-346 (1972). The legal effect of the reduction is merely to remove the threat of contempt proceedings against the obligated spouse to the extent of the reduction. *Metcalf* v. *Commissioner,* 271 F.2d 288, 292 (1st Cir. 1959). *Knox* v. *Remick* at 435. In such a case, the party receiving alimony "is entitled to recover in a contract action any difference between the amount [the spouse] contracted to pay and the amount the judge has ordered him to pay." *Id.*

Dr. Binder disputes the manner in which the Superior Court applied these general principles to the case at bar. He concedes that Mrs. Binder could recover in a contract action the difference between, for example, the $200 weekly support payment called for by the modified di-

---

[3] Contrast a complaint for modification seeking support in excess of the level agreed to by the parties, in conflict with an undertaking to accept the agreed upon level in full satisfaction of all future claims for support. In such a case, if "the agreement was not the product of fraud or coercion [and] . . . was fair and reasonable at the time of entry of the judgment nisi, and . . . the parties clearly agreed on the finality of the agreement on the subject of interspousal support, the agreement concerning interspousal support should be specifically enforced, absent countervailing equities." *Knox* v. *Remick,* 371 Mass. at 436-437. The use of an agreement intended to operate as a final settlement of support to bar a complaint seeking alimony at a higher level has been upheld in *Bailey* v. *Dillon,* 186 Mass. 244, 246-248 (1904), *Holt* v. *Holt,* 257 Mass. 232 (1926); and *Reeves* v. *Reeves,* 318 Mass. 381 (1945). See also *Ross* v. *Ross,* 371 Mass. 439, 440, 442-443 (1976).

vorce decree and the $300 weekly support payment called for by the separation agreement; but such a recovery, he contends, is confined to the time period commencing with the judgment of modification. That judgment, he contends, should be regarded as a prior adjudication of the arrearages, binding on the parties, or, should that judgment be reopened (as has in fact happened) on appeal, as a prior pending action between the same parties involving the same cause of action, thus indicating dismissal of the later commenced action in favor of the earlier. Mrs. Binder's claim for the $20,600 arrearages owed as of January 5, 1977, is, Dr. Binder argues, a single cause of action, and she is not entitled to pursue that claim for the same $20,600 arrearages in two separate actions in two different courts. In support of the argument, Dr. Binder relies on a passage in *Knox* v. *Remick*, 371 Mass. at 438, which reads: "We believe that all aspects of the dispute between the spouses should be resolved in one proceeding. If one spouse seeks modification of a support order so as to depart from the terms of the separation agreement, the other spouse should raise the availability of the separation agreement as a potential bar in the same proceeding."

We interpret the quoted passage as applying to the situation described in note 3, *supra,* where one spouse is seeking an increase in alimony in violation of a contractual commitment not to do so (see *Knox* v. *Remick* at 435-436), and not as applying to a situation, such as the present, where the paying spouse is seeking a reduction in the alimony mandated by the judgment. The agreement could not operate as a potential bar to such a modification, as was held in the cases cited above; the modification may cause the alimony obligation imposed by the judgment to be different from that agreed to by the parties, but the obligations are not inconsistent or incompatible, each being capable of enforcement without infringing upon the other. It would, of course, be economical of judicial time if the action to enforce the support provisions of

the divorce judgment and the action to enforce those of the separation agreement could be brought in one court and consolidated for hearing; but that millenium of efficiency seems impossible to achieve in the present twilight zone of trial court unification; for the "Superior Court Department" (G. L. c. 211B, § 1, inserted by St. 1978, c. 478, § 110) has no jurisdiction to enforce the support provisions contained in a divorce judgment of the "Probate and Family Court Department," *Allen* v. *Allen*, 100 Mass. 373 (1868); *Wilson* v. *Caswell*, 272 Mass. at 301; *Lyon* v. *Lyon*, 318 Mass. 646, 648-649 (1945); *Hills* v. *Shearer*, 355 Mass. at 407, and the latter department, not having general jurisdiction but only such as is conferred by statute, has no authority to hear a civil action for simple contract damages. See *Charney* v. *Charney*, 316 Mass. 580, 582-583 (1944). The claims are enforceable, therefore, only by separate proceedings in different courts; and our law does not support the proposition that the plaintiff is put to an election between her rights under the divorce judgment and her rights under the separation agreement. Rather, she is entitled to "have the protection of both." *Welch* v. *Chapman*, 296 Mass. at 488.

Apart from these procedural complications, there are important substantive reasons for declining to treat a claim for arrearages under the divorce judgment and a claim for arrearages under the agreement (even when the claims are identical in amount) as if they stated the same cause of action. The characteristics of the claims are too dissimilar. The arrearages under the agreement are definite in amount, and, if the agreement is enforceable at all, the party to whom the arrearages are owed is entitled as matter of law to recover a judgment for the full amount in arrears. The right under the divorce judgment is "ephemeral in that it [can] be revised downward at any time . . . ." *Metcalf* v. *Commissioner*, 271 F.2d at 292. A Probate Court has the power to reduce the alimony provisions of its divorce judgment retroactively, as well as prospectively. *Watts* v. *Watts*, 314 Mass. 129, 133 (1943);

*Cohen* v. *Murphy,* 368 Mass. 144, 147 (1975). That power may be exercised on a complaint for enforcement by contempt, even where no complaint for modification is before the court, *Watts* v. *Watts, supra; Bloksberg* v. *Bloksberg, ante* 233, 234-235 (1979); and it may also be exercised on a petition for execution (see Mass.R.Dom.Rel.P. 69 [1975]) to satisfy arrears. *Knapp* v. *Knapp,* 134 Mass. 353, 355-357 (1883). *Watts* v. *Watts, supra.* Were we to hold that the contempt proceeding in the Probate Court barred a subsequent contract action in the Superior Court for the arrearages, we would violate the principle that "in modifying the decree the [Probate] court could not affect the rights of the parties under the agreement." *Freeman* v. *Sieve,* 323 Mass. at 657.

Dr. Binder makes the further contentions that, if Mrs. Binder may seek arrearages in Superior Court after having done so in the Probate Court, the claim in the Superior Court must be confined to the difference between the alimony called for in the separation agreement and that ordered paid by the probate judgment, and that, because the probate judgment ordered payment of the entire $20,-600 in arrears, albeit in instalments of $50 weekly, there was in fact no difference to be recovered, and the Superior Court should have dismissed the complaint. The contention rests on a mischaracterization of the probate judgment. That judgment (now reversed) was not, in our view, one for $20,600, but rather a judgment for $50 per week until $20,600 should have been paid.[4] It thus constituted in legal effect a retroactive modification in the arrearages due under the divorce decree. But we prefer to dispose of the contention on the broader ground that Mrs. Binder was entitled at all times, regardless of proceedings in the Probate Court to enforce the divorce decree, to

---

[4] For that reason we also reject Dr. Binder's contention that Mrs. Binder was entitled to waive payment of $50 per week and take out an execution under Mass.R.Dom.Rel.P. 69 for the full $20,600 immediately.

bring a civil action in the Superior Court for the difference between the amount the agreement required to have been paid and the amount which had in fact been paid towards that obligation. That amount was $20,450 ($20,600 less three $50 payments under the probate judgment), which was correctly made the basis of the Superior Court judgment.

This arrangement, does not, as Dr. Binder argues, raise the spectre of double recovery. Whatever amounts may be recovered in enforcement of the Superior Court judgment must be credited towards his alimony obligations under the probate decree, and whatever amounts may be paid pursuant to a final judgment in the contempt proceeding in the Probate Court must be similarly credited towards satisfaction of the Superior Court judgment, not because the obligations under the divorce decree and the separation agreement constitute the same cause of action, but because those obligations must be presumed in the absence of provision to the contrary to be concurrent and not cumulative.

The entry in the appeal from the judgment of the Superior Court is to be

*Judgment affirmed.*