M. Frances Donovan vs. Robert J. Donovan
& another, trustee.[1]

Essex. November 5, 1982. — December 21, 1982.

Present: Hale, C.J., Grant, & Smith, JJ.

*Workmen's Compensation Act,* Alimony and child support. *Divorce and Separation,* Support payments from workmen's compensation benefits. *Words,* "Debt."

An obligation to make alimony and child support payments pursuant to court order is not a "debt" within the meaning of G. L. c. 152, § 47, as in effect prior to St. 1981, c. 428, § 4, and thus a Probate Court had the power to order a defendant's employer to pay to the beneficiary of a support order a portion of the defendant's periodic earnings or disability benefits, including worker's compensation. [63-65]

COMPLAINT for divorce filed in the Probate Court for the county of Essex on December 19, 1975.

A motion for clarification or modification of a support order, filed on August 24, 1981, was heard by *Freedman, J.*

*John J. Fitzpatrick* for Robert J. Donovan.

*William R. Blane,* for New England Telephone and Telegraph Company, trustee.

*Jeffrey N. Moxon,* for M. Frances Donovan, submitted a brief.

HALE, C.J.  The defendant, Robert J. Donovan, has appealed from an order of a judge of a Probate Court allowing in part the motion of the New England Telephone and Telegraph Company (summoned as trustee) to clarify or modify the court's support order of June 12, 1980.

On April 14, 1978, the court entered a judgment of divorce nisi on the complaint of the plaintiff.  That order provided, among other things, that the defendant should

---

[1] New England Telephone and Telegraph Company.

pay the plaintiff alimony and child support of $120 a week. The defendant did not comply with that order. On November 5, 1979, he was found to be $9,840 in arrears and was ordered to assign $120 a week of the wages he received from his employer, the New England Telephone and Telegraph Company (company), to the plaintiff and to assign an additional $100 a week from his wages until the arrearage should be fully paid. The record does not disclose whether the defendant obeyed that order. It does reveal that an amended complaint for contempt was filed on June 12, 1980. On that day the probate judge ordered the company to pay the plaintiff the sum of $220 per week out of the defendant's wages.

On November 14, 1980, the defendant was injured during the course of his employment and became eligible for benefits under the company's "Plan for Employees' Pensions, Disability Benefits, and Death Benefits" (the plan). Under the plan he would receive the equivalent of his full pay, $471.50 per week, for fifty-two weeks and thereafter the greater of half his pay or the statutory amount of workers' compensation for so long as he should remain disabled.[2]

The benefit payment of $471.50 was comprised of a workers' compensation portion of $245.48 and an accident disability portion of $226.02. Each week the company deducted $220 pursuant to the June 12, 1980, order, as well as $51.25 for Federal and State income taxes on the income portion of the plan. The balance of $200.25 was paid to the defendant. Thereafter, at the request of the defendant, a conference was held before a member of the Industrial Accident Board (IAB) pursuant to G. L. c. 152, § 7, at which the defendant asserted that the company was in violation of G. L. c. 152, § 47, which insulates workers' compensation payments from assignment and attachment or application to the employee's debts. On August 7, 1981, the member

[2] The company is a self-insurer. Compensation of $245.48 was agreed upon and approved by the Division of Industrial Accidents. G. L. c. 152, § 6.

ordered the company to pay the defendant the entire work-ers' compensation portion of his weekly benefit without deductions. The company was further ordered to pay the defendant $1,794.96, the total amount it had deducted from the defendant's weekly workers' compensation pay-ments since November 17, 1980.

Faced with a dilemma, the company filed a "Motion for Clarification or Modification of Order," specifically direct-ing the Probate Court's attention to the conflict between the IAB's order of August 7, 1981, and the court's order of June 12, 1980. On September 15, 1981, the court ruled (1) that the $1,794.96 which the IAB had ordered paid was not due and owing the defendant and (2) that the company was to continue to make the payments of $220 as provided by the June 12, 1980, Probate Court order. It is from this September 15, 1981, order that the defendant appeals.

The sole issue presented is whether a support obligation under a court order pursuant to G. L. c. 208 was a "debt" within the meaning of G. L. c. 152, § 47, as appearing in St. 1977, c. 856, § 2.[3] We hold that it was not and affirm.

It has long been held that an order for support, whether for support already due or to become due, is "not, strictly speaking, a 'debt' within the legal meaning of that word." *Williamson* v. *Williamson*, 246 Mass. 270, 273 (1923). See also *Knapp* v. *Knapp*, 134 Mass. 353, 355 (1883); *Lyon* v. *Lyon*, 318 Mass. 646, 649 (1945); *Sawyer* v. *Kuhnle*, 324 Mass. 53, 56 (1949). Contrast *Purdon* v. *Blinn*, 192 Mass. 387 (1906), and cases cited therein. This rule follows "[f]rom the peculiar nature of a decree for alimony, and the right and power in the court to revise or alter it at any

---

[3] "No payment shall be assignable or subject to attachment or be liable in any way for debts, except to a veteran's agent or the commissioner of veterans' services as and to the extent permitted by section five of chapter one hundred and fifteen and except as permitted to the department of public welfare under chapters eighteen, one hundred and seventeen, one hundred and eighteen, and one hundred and eighteen E." Statute 1981, c. 428, § 4, which excepted certain support payments such as the present from the prohibition of § 47, did not become effective until December 9, 1981.

time." *Knapp* v. *Knapp, supra* at 357. See G. L. c. 208, § 37. A Probate Court has the power to revise amounts due for arrearages as well as for future payments. *Cohen* v. *Murphy,* 368 Mass. 144, 147 (1975). *Binder* v. *Binder,* 7 Mass. App. Ct. 751, 760 (1979), *S.C.,* 9 Mass. App. Ct. 845 (1980).

Review of the workers' compensation act (Act) as a whole supports our conclusion that alimony and child support are not "debts" within the meaning of G. L. c. 152, § 47. In construing statutes "[t]he general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by ordinary and approved usage of language, considered in connection with the cause of enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Commn.,* 367 Mass. 360, 364 (1975), quoting from *Hanlon* v. *Rollins,* 286 Mass. 444, 447 (1934). "The prime consideration of public policy in the area of workmen's compensation is, and should be, the relief of the workman and his family from the deprivation of wages resulting from his injury." Locke, Workmen's Compensation § 30, at 40 (2d ed. 1981). The obvious policy behind G. L. c. 152, § 47, is to relieve the injured worker from the pressure of claims hostile not only to his own essential needs but also to those of his dependents. The Legislature could not have intended that the obligor enjoy workers' compensation while he neglects to provide for those persons whom he is legally obligated to support. See *Krokyn* v. *Krokyn,* 378 Mass. 206, 214 (1979). In fact, in determining the amount of compensation to be awarded an injured workman, the Act, subject to a maximum gross payment, includes payments for dependent children whom the worker is required by judgment or order of the court to support. G. L. c. 152, § 35A. It is illogical to think that the Legislature would increase a worker's compensation for children he is obliged to support, yet not allow those chil-

dren access to the funds should the worker fail to meet his legal obligation.

Our conclusion here comports with a trend in other States toward allowing workers' compensation to be reached for the benefit of persons, such as wives, children, and former wives whom an employee has an obligation to support. 2 Larson, Workmen's Compensation Law § 58.47 (1981). "The courts have frequently recognized that the general exemption of workmen's compensation awards from creditors' claims does not extend to claims based on an award of alimony or support. The usual rationale is that such claims are not true debts — the wife and children are not creditors in the ordinary sense, but are in fact persons meant to be benefited by the workmen's compensation law as much as is the workman himself." Annot., 31 A.L.R.3d 532, 542 (1970). For example, in *Steller* v. *Steller,* 97 N.J. Super. 493 (1967), claimant's compensation benefits were held to be reachable to satisfy the support claims of the wife and children, even though by statute the benefits were not assignable and were exempt from claims of creditors. See also *Patton* v. *Patton,* 573 S.W. 2d 71 (Mo. App. 1978); *Biles* v. *Biles,* 163 N.J. Super. 49 (1978).

We hold that a support obligation for past and future payments was not a "debt" within the meaning of G. L. c. 152, § 47, as in effect prior to St. 1981, c. 428, § 4 (see note 3, *supra*). Under G. L. c. 208, § 36, it was within the power of the Probate Court to order the defendant to assign a portion of his periodic earnings or disability benefits, including workers' compensation, to the beneficiary of a support order.

*Order affirmed.*