HELEN G. PAGAR *vs.* GEORGE O. PAGAR.

Norfolk. September 13, 1979. — January 2, 1980.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*Divorce,* Modification of decree, Child support, Alimony.

In proceedings seeking modification of the alimony and child support provisions of a divorce decree, the judge's findings that the wife's income had increased and her expenses had decreased were clearly erroneous, and modification was therefore not warranted on that basis. [3-5]
In proceedings seeking modification of the alimony and child support provisions of a divorce decree and an adjudication of contempt, the husband's financial statements were too inconclusive to warrant a finding that he was unable to pay the full amount of his arrearages. [5-8]

LIBEL for divorce filed in the Probate Court for the county of Norfolk on December 23, 1971.

Two COMPLAINTS seeking modification, filed on October 7, 1976, and November 17, 1976, respectively, and a complaint for contempt filed on December 13, 1976, were heard by *Ford, J.*

*Ira D. Feinberg* for the plaintiff.

*Richard W. Schwartzman* for the defendant.

PERRETTA, J. The husband and the wife entered into a separation agreement which was incorporated by reference in the 1975 judgment of divorce. The agreement required the husband to make weekly alimony and child support payments. Commencing in October of 1976, the husband

decreased his payments, and he filed a complaint for modification. The wife then filed cross complaints for modification and contempt. The probate judge reduced the amount of the husband's support obligations, and he adjudicated the husband in contempt. He found, however, that the husband could not pay the full amount of the arrearages so he reduced them and entered orders relative to payment of the remainder. The wife appeals, alleging clear error in the findings of fact and conclusions of law made by the judge. Mass. R.Dom.Rel.P. 52(a) (1975). We reverse the judgments.

The evidence has been reported, and in reviewing the judgments all issues of fact, law and discretion are open to us, *Krokyn* v. *Krokyn,* 378 Mass. 206, 208 (1979), *Binder* v. *Binder,* 7 Mass. App. Ct. 751, 755 (1979). Moreover, we may find facts in addition to those found by the trial judge. *Taylor* v. *Lassell,* 4 Mass. App. Ct. 539, 540 (1976). *Steranko* v. *Inforex, Inc.,* 5 Mass. App. Ct. 253, 255 (1977). The separation agreement provided that the wife was to have custody of Gary and Jeffrey, the parties' children who were then eighteen years nine months, and fourteen years of age, respectively. The husband was to pay $150 a week for the support of the "minor children"[1] until Jeffrey should reach eighteen; he was also to pay $150 a week alimony until Jeffrey should reach that age, at which time the weekly alimony would increase to $200. The husband agreed to pay the college tuition, room and board and incidental educational expenses of the children. At all times here material the husband was to pay a total of $300 a week to his wife.

There can be no modification of judgments relative to support under G. L. c. 208, § 37, in the absence of changed circumstances in the needs or the resources, or both, of the parties since the entry of the judgment which they seek to modify. *Robbins* v. *Robbins,* 343 Mass. 247, 249 (1961). *Binder, supra* at 754. The judge concluded that since the

---

[1] At the time the parties executed the agreement, January 8, 1975, Gary was not a minor. Effective January 1, 1974, clauses Forty-eighth through Fifty-first were inserted in G. L. c. 4, § 7, by St. 1973, c. 925, § 1. See also G. L. c. 231, § 85P, inserted by St. 1975, c. 315, § 1.

time of the divorce the husband's income and expenses had decreased but that he still suffered a weekly shortfall. On the other hand, he found that the wife's expenses had decreased, while her income had increased. Our review of the record convinces us that the judge's findings and conclusions are clearly erroneous. They are based primarily upon a comparison of the parties' financial statements filed at the time of the divorce (Rule 49 of the Probate Courts [1973]) with those they filed at the time of the trial on the complaints here at issue (Rule 401 of the Probate Courts [1975]). These four statements were admitted in evidence and marked as exhibits.

We examine first the needs and resources of the wife as reflected in her two statements. At the time of the divorce the wife was unemployed. Her first financial statement includes the support she was then receiving from the husband, and with no tax liability on that money, her expenses exceeded her income. Pursuant to the separation agreement, the husband conveyed to her, subject to the mortgage, a two-unit house in Hull. At the time of the trial of the present complaints, the wife rented one unit of this house year round. The second unit was unheated and could only be rented in the summer. During the summer she and the children would use the unrented unit themselves. In all, this house represented a thirty dollar weekly loss to her, not taking into account the equity being earned by her mortgage payments. Subsequent to the divorce she obtained employment as a sales person in a department store. Due to ill health, she works only part time. Her 1978 financial statement shows that her weekly expenses exceed both that amount of income she in fact receives and that amount she is entitled to receive under the 1975 judgment. Her basic living expenses have not decreased,[2] and the judge's conclusion to the contrary appears to be grounded upon an error in computation caused by the fact that the wife prepared her 1975 financial statement on the basis of monthly expense

---

[2] As considered and compared by the judge, basic living expenses were food, rent, clothing and utilities.

figures whereas she used weekly expense figures in her 1978 statement. When the other expenses listed in her 1978 statement are considered, her weekly deficit becomes greater.[3] The earnings from her part-time employment are minimal, and as previously noted, her expenses exceeded her income in 1975, before she was employed and before she incurred any tax liability. Thus, although her part-time employment does increase her weekly income, it does not give rise to a change in circumstances which would warrant a reduction in the husband's obligation to her. The judge also concluded that the "income potential" lost by the wife's personal use of the Hull property in the summer "appears to be voluntary and not in her best interest." A party has no right to waste an asset deliberately or ignore a feasible source of income and then request an increase in support. However, the judge's conclusion is based only on the finding that the wife puts her property to personal use in the summer; there is no evidence of how much income could be generated by such a rental or to what extent it could reduce the wife's weekly deficit. As such, this conclusion is too speculative to constitute a determinative factor in assessing the resources of the wife. The judge also found that at the time of the divorce there were two minor children residing with the wife and that in 1978 only one, Jeffrey, was at home. The evidence shows that during the time between the divorce and the trial, Gary attended college. The wife argues that the judge's finding is erroneous because the separation agreement contemplated child support for only one child. (See note 1, *supra.*) The finding, however, does not purport to be in limitation of the husband's obligations under the agreement (see e.g. *Orlandella* v. *Orlandella,* 370 Mass. 225, 230 [1976]; *Feakes* v. *Bozyczko,* 373 Mass. 633 [1977]); rather, it is a finding intended to reflect the real circumstances relating to the wife's needs and expenses. In light of

---

[3] By way of example and not limitation, some of her expenses are insurance, automobile maintenance and dry cleaning. See *Coe* v. *Coe,* 313 Mass. 232, 236 (1943); *LaVallee* v. *LaVallee,* 3 Mass. App. Ct. 736 (1975).

our conclusion on the issue of the circumstances of the wife, we need only comment that the judge could have considered Gary's needs in making his determination. *Manes* v. *Manes*, 370 Mass. 235, 237 (1976). A comparison of the wife's financial statements, which were not contradicted by other documents or testimony, establishes that her needs have increased but so also has her income. Hence, we cannot conclude that she established a change of circumstances which would warrant modification of the judgment on the basis of her complaint.

We next consider the needs and resources of the husband as set out in his testimony and financial statements in support of his allegations of changed circumstances.[4] The husband has always been the sole stockholder of his business, Pagar Studios, Photography, Inc. At the time of the divorce he was devoting all his working hours to this business, which consisted of two studios. Shortly after the divorce he sold a boat he owned and realized a $40,000 profit. He lent this money to one Dubois, who used it to purchase a yacht, the Freedom. Title to the Freedom is held by American Boat Charter & Builders, Inc., a charter cruise business organized by Dubois at the same time the yacht was purchased. All the corporate stock was then signed over to the husband as security for the loan. Although the husband has never been a principal in the corporation, he is the bookkeeper for the business. He does not anticipate repayment of the loan until the corporation starts to show a profit; it had gross receipts of $11,000 for the period here in question, 1975 through 1978. In January of 1976, he closed one of his studios because of a decline in business. This decline resulted in a $100 decrease in his weekly personal gross in-

---

[4] The husband's October, 1976, complaint for modification recited only that Jeffrey no longer resided with the wife because he had been enrolled in a private school at an annual cost of $7,000. When Jeffrey left this school and returned home in 1977, the husband continued to pay the reduced amount of support. On the morning of the trial he filed an amended complaint alleging "a material and substantial change in the financial circumstances of the parties." He requested that his support obligations be reduced to an amount not to exceed fifty dollars a week.

come. During this period, he contributed $9,000 for improvements to the Freedom. He serves as captain of the Freedom and receives twenty-three dollars a week for his services as such. Based upon this evidence, the judge found that the husband's income had decreased and that although his basic living expenses (see note 3, *supra*) had also decreased, when his other expenses were considered, he suffered a weekly shortfall. It appears from the judge's conclusions that he balanced the financial situations of the parties, as reflected in their current financial statements, and concluded that the wife's increased income and decreased expenses justified a reduction of the husband's obligations. In the action for contempt, he concluded that the husband lacked sufficient available assets to pay the full amount of the arrearages.

On the record before us we cannot conclude that the husband, on his complaint, met his burden (*Binder, supra* at 757) of establishing a change in circumstances. In the first instance, the husband has not complied with rule 401 in preparing his financial statement. "All the evidence on the husband's financial capabilities necessary to determine support . . . will be included in the husband's financial statement, which is required by Rule 401 of the Probate Courts, as amended (1977)." *Borman* v. *Borman,* 378 Mass. 775, 791 (1979). The husband's 1978 financial statement shows a weekly deficit no matter which support expense is used, the amount he is in fact paying or the amount he is required to pay. This deficit, however, is too inconclusive a basis upon which to find that the husband has suffered an adverse change in circumstances. His 1978 weekly itemization for "clothing — children" cannot be included in his total weekly expenses because the husband has no right to seek a credit for the wife's obligation under the agreement and judgment while simultaneously preventing her from performing that duty by unilaterally reducing his support payments on the basis of insufficient funds. Further, the husband's statement filed at the time of the divorce also reflects a weekly deficit, using the support figures set out in the agreement.

The amount of that deficit cannot be ascertained because the husband failed to specify the cost of two substantial expenses which he listed, medical insurance and college tuition. In spite of his then weekly shortfall, he met the terms of the agreement and judgment for almost two years.[5] Because of the obscurities in the husband's expenses listed in his two financial statements, it cannot be concluded that a seventy-seven dollar decrease in his weekly gross income amounted to a changed circumstance which warranted modification of the 1975 judgment.

Additionally, in his 1978 financial statement the husband did not list his stock or interest in American Boat Charter & Builders, Inc., in his description of his assets. In *Krokyn,* 378 Mass. at 210, the court cited with approval *Kay v. Kay,* 37 N.Y. 2d 632, 636 (1975), where that court stated, "[A]s to alimony and child support both, if it were necessary for the husband here to utilize his capital or other assets, they would not be exempt from the requirement that he maintain the marital standard of living simply because he voluntarily maintains his finances in a form that limits the income they produce." Notwithstanding the husband's failure to describe this asset in his financial statement, the judge did consider it but concluded that it was not in the parties' long range best interests "[t]o order the husband to divest himself of the income producing potential represented by the charter boat."[6] He further determined that the husband lacked sufficient assets to pay the total amount of the ar-

---

[5] While the husband intimates that he was able to make these payments because of insurance proceeds he received as a result of fire damage to property he owned, the evidence of the husband's finances is too clouded to allow us to consider this suggestion, and we cannot ignore the acknowledged fact that he contributed $9,000 to improve the Freedom during this period.

[6] While the judge found that the husband was the sole stockholder of this corporation, he also found that Dubois, who had contributed money for improvements to the yacht, was a "limited partner in the boat venture" but that he had "no ownership interest" in the yacht. Dubois is not a limited partner as defined within G. L. c. 109, and his interest in the yacht is evidenced by his stock in the corporation, which he signed over to the husband only for security purposes.

rearages. The conclusion that the yacht possesses "income pro-
ducing potential" rests upon evidence that this charter cruise
business has gross receipts of about $3,000 a year. The hus-
band, in short, is maintaining his finances in a form that limits
the income he receives, twenty-three dollars a week, from an
initial $49,000 investment. We cannot conclude that the yacht
possesses such income potential that it is in the parties' best in-
terests, in view of their circumstances, that this asset be main-
tained in this limited fashion. Further, the husband's interest
in the yacht must be considered in any determination of his
ability to pay the total amount of the arrearages due to the
wife. "The law does not require that an obligor be allowed to
enjoy an asset . . . while he neglects to provide for those per-
sons whom he is legally required to support. Thus, both reason
and precedent justify treating the ownership of assets as rele-
vant evidence of ability to pay." *Krokyn,* 378 Mass. at 214.[7]

In light of our decision it is unnecessary to consider the re-
maining contentions of the wife. The judgments are reversed,
and the modification and contempt complaints are remanded
to the Probate Court for further proceedings consistent with
this opinion. The modification proceedings shall be limited to
the issue of changed circumstances which may have occurred
since April 12, 1978, the last day of the trial. In the absence of
such circumstances the judgment of 1975 is to stand. The con-
tempt proceedings are to be reopened to the extent necessary
to compute the amount of the arrearages to the present, to
determine the husband's ownership interest in the Freedom,
and to redetermine the husband's ability to pay the total
amount of arrearages in accordance with the principles set
forth herein. Neither party is to have the costs of this appeal.

*So ordered.*

---

[7] The record contains the husband's and Dubois' general testimony that the
corporate stock was "signed over" to the husband as collateral for the loan (see
note 6, *supra*), but there is nothing in the record which precisely establishes
the husband's ownership interest in the yacht. Such a determination should
have been made.