LILLIAN KENNEDY *vs.* GEORGE D. KENNEDY.

Hampden.  March 10, 1980. — June 27, 1980.

Present: BROWN, GREANEY, & KASS, JJ.

*Jurisdiction*, Nonresident, Under long-arm statute. *Statute*, Retroactivity. *Husband and Wife*, Separate support. *Divorce*, Foreign divorce. *Domicil*.

In the circumstances, the long-arm provision of G. L. c. 223A, § 3(g), retroactively conferred jurisdiction over a nonresident husband for purposes of a separate support proceeding filed in 1972 where it appeared that, although a separate support order was entered in 1972, the husband had filed a petition to vacate the order in 1973 but did not bring the petition forward for hearing until 1978, and that, therefore, the case was still pending. [115-117]

In a separate support proceeding, there was sufficient evidence to warrant a conclusion that an Arizona divorce decree obtained by the husband was invalid because the husband did not have a bona fide residence in Arizona for the one-year period preceding his divorce action as required for a valid divorce under Arizona law. [117-118]

Evidence in a separate support proceeding warranted findings that the husband was subject to the jurisdiction of the court under G. L. c. 223A, §§ 2 and 3(a). [119]

PETITION filed in the Probate Court for the county of Hampden on June 8, 1972.

The case was reported by *McLellan, J.*

*James M. Walsh* for the defendant.

*Wendy Sibbison* (*William C. Newman* with her) for the plaintiff.

KASS, J.  On reservation and report[1] from the Probate Court we are asked to decide: (1) whether the long-arm provision in G. L. c. 223A, § 3(g), inserted by St. 1976, c. 435, may, on the facts presented, retroactively confers jurisdic-

---

[1] G. L. c. 215, § 13.

tion over a nonresident defendant in a domestic relations action; (2) the validity of a divorce decree granted in Arizona; (3) whether jurisdiction may have rested on other provisions in G. L. c. 223A; and (4) whether the nonresident husband is estopped from litigating the validity of the Arizona divorce decree at a subsequent evidentiary hearing.

All the facts we are to consider appear in an "Agreed Statement of Facts." In summary those facts are as follows:

Lillian Kennedy (Lillian) and George D. Kennedy (George) were born and raised in Holyoke, married there in December, 1956, and continued to reside in Holyoke until September, 1959, when George went on active duty with the United States Air Force. For some years, the Kennedys lived in the various States to which George's duties took him. In 1968, they purchased a home in Milpitas, California, where George was stationed at the time. Until George's departure for Korea in June, 1970, the Kennedys lived in California. In July or August of 1971, George, while still in Korea, received orders posting him to an air base in Tucson, Arizona. Upon his return from Korea, the Kennedys sold their home in California and returned to Holyoke, where they bought a home to which they took title as tenants by the entirety. There the Kennedys lived together (i.e., husband, wife and their five children) for about two weeks and then George, on or about October 26, 1971, departed for duty in Arizona. He remained a legal and voting resident of Holyoke through 1972. Lillian has been a legal and voting resident of Holyoke throughout. Approximately seven months after George left for Arizona, Lillian, claiming desertion, brought a petition for separate support dated June 8, 1972, in the Probate Court for Hampden County. That court issued a citation on June 27, 1972, by registered or certified mail, to George, who acknowledged receipt of certified mail notice by a return receipt which he signed on July 11, 1972. He did not, at that juncture, file an answer or make an appearance in the separate support action. Rather, on July 12, 1972, George filed a complaint for divorce in Pima County, Arizona. Lillian was notified of the

action by personal service but neither answered nor appeared in the Arizona action. The Superior Court of the State of Arizona for the County of Pima entered a divorce decree on August 29, 1972. On September 11, 1972, Lillian moved pro se in Arizona to set aside the Arizona decree, which motion was denied. Meanwhile, the Massachusetts proceeding for a separate support order matured in a decree of separate support entered September 25, 1972. After the Probate Court issued a separate support order, George filed a special appearance in Massachusetts and a petition to vacate the order for failure of jurisdiction over his person. He filed that petition in September, 1973, and did not bring it forward for hearing until March, 1978.

1. *Jurisdiction founded on G. L. c. 223A, § 3 (g).* Although, as will appear, there may have been other bases, the probate judge rested a finding of personal jurisdiction over George by retroactive application of G. L. c. 223A, § 3(g), a long-arm statute which grants personal jurisdiction over a nonresident defendant in domestic relations matters arising out of a marriage during which the marital domicil of both parties has been in Massachusetts during one of the two years immediately before the commencement of the action. When Lillian initiated the separate support proceeding in 1972, subparagraph (g) was not on the statute books. A motion filed March 14, 1978, for attachment or garnishment of George's pay to achieve compliance with the 1972 Massachusetts support order,[2] coupled with the revival by George (through bringing it on for hearing) of his September 19, 1973, petition to vacate the separate support decree, provided the occasion for the judge to invoke § 3(g). In doing so he relied on *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. 680, 684 (1970), which held that c. 223A is retrospective in application because remedial in nature. The

---

[2] The petition for separate support had been brought under G. L. c. 209, § 32; the motion for an order of attachment or garnishment invoked 42 U.S.C. § 659 (1976), subject to the amounts made exempt by the operation of G. L. c. 246, § 28.

court quoted with approval *Kilbreath* v. *Rudy*, 16 Ohio St. 2d 70, 72 (1968), that "[t]hese [long-arm] statutes do not create new wrongs, they merely let local courts reach farther for personal jurisdiction over those who have committed established wrongs." In *Diamond Crystal Salt Co.* v. *P. J. Ritter Co.*, 419 F.2d 147, 148 (1st Cir. 1969), the court said that with the exception of statutes which predicated jurisdiction upon fictionalized consent (*e.g.*, the appointment by a nonresident of the Registrar of Motor Vehicles for service of process), the overwhelming weight of judicial authority favored retrospective construction of the long-arm statute.

If this were a case of conferring jurisdiction under the long-arm statute over asserted wrongs which occurred before the statute's enactment, the *Kagan* and *Diamond Crystal Salt* precedents would be controlling. What prompts us to take a second look at the retroactivity issue in the instant case is that the 1972 separate support proceeding had reached a certain degree of completeness[3] in the sense that an order was made and no further court business was in prospect until a party applied for modification of the order. G. L. c. 209, § 32. As we observed in *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 88 (1979), "substantive" and "procedural" are uncertain labels and the essential task is to inquire whether the proceedings have "gone past the procedural stage to which the statute pertains." Thus, "no 'retroactive' procedural statute could apply to a case which has been closed, *i.e.*, has gone to judgment and either been affirmed on appeal or not been appealed within the time allowed for appeal." *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 627 (1974).

The instant case did not reach the requisite degree of finality. An order for separate support under G. L. c. 209,

---

[3] The Massachusetts order required George to pay $850 per month for Lillian and the minor children and to convey to her the real estate in Holyoke; the Arizona order was to pay $100 per month per child, to transfer to Lillian the real estate in Holyoke and its furnishings, and to transfer to Lillian an automobile.

§ 32, is subject to continuing reappraisal and modification by the Probate Court, even in the face of an agreement — none is here present — to fix support payments for all time. *Madden* v. *Madden*, 359 Mass. 356, 363, cert. denied, 404 U.S. 854 (1971). *Ryan* v. *Ryan*, 371 Mass. 430, 432 (1976). Thus, while a separate support order may not be disturbed in the absence of a change of circumstances, see *Fried* v. *Fried*, 5 Mass. App. Ct. 660, 665 n.6 (1977), and cases cited, nonetheless the docket always remains open on a separate support order to accommodate to such change, should it occur. Moreover, George had appeared specially on September 19, 1973, to contest the jurisdiction of the Probate Court, filed a petition to vacate the Massachusetts decree, and did not press it for hearing until after March 14, 1978, when Lillian had moved to garnish or attach George's pay in satisfaction of accumulated arrearages on the Massachusetts order. While a special appearance is the antithesis of submission to jurisdiction, George, by bringing his petition to vacate the separate support order and then leaving it in limbo gave a "still pending" quality to the proceedings from 1972 until 1979, when the court ruled on it. In these circumstances we are of the opinion that it was correct to apply the retroactivity principle stated in *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. at 684. Compare the manner in which amendments to a complaint relate back to the date of filing the original complaint. Mass.R.Civ.P. 15(c), 365 Mass. 762 (1974). *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 89 (1967). We would take a different view concerning establishing jurisdiction through retroactive application of G. L. c. 223A, § 3(g), over a matter which had gone to final judgment, *e.g.*, an order for a lump sum payment, from which appeals were exhausted or not taken. On such assumed facts, the absent party will have lost all opportunity to defend on the merits. George has not forgone that opportunity in the inchoate proceedings to which he is a party.

2. *Validity of the Arizona divorce.* At the time George brought his complaint, Arizona required that the party

bringing proceedings have been "an actual bona fide resident of the state for one [1] year."[4]  George filed his complaint on July 12, 1972.  He did not return from duty in Korea until September, 1971, and then brought his family to Holyoke where he bought a house to which he took title with Lillian as tenants by the entirety.  He left for Arizona on or about October 26, 1971.  Manifestly he could not have accumulated one year of residence in Arizona until sometime after October, 1972, three months after he filed his complaint for a divorce and two months after the Arizona divorce decree was entered.  We recognize, of course, that a two-year residency requirement in Massachusetts was held constitutionally deficient on equal protection grounds. *Fiorentino* v. *Probate Court*, 365 Mass. 13, 19-20 (1974).  It is not for us, however, to render an opinion as to the constitutionality of the statute of a sister State.[5]  In addition, the house in Holyoke and the maintenance of voting registration there formed ample basis for the finding by the Probate Court that the alleged domicil in Arizona was not bona fide, and provided an independent basis for not giving full faith and credit to the Arizona decree.  See *Madden* v. *Madden*, 359 Mass. at 366-367; *Chevalier* v. *Chevalier*, 9 Mass. App. Ct. 80, 81 (1980).  Lillian's belated challenge of the Arizona divorce decree after its entry did not preclude Massachusetts from judicial reexamination of the jurisdictional facts because up to and including the decisive date of the decree she did not appear or participate in the Arizona proceedings. *Rubinstein* v. *Rubinstein*, 324 Mass. 340, 343 (1949).  See also *Ragucci* v. *Ragucci*, 357 Mass. 235, 237-238 (1970).  Compare *Sherrer* v. *Sherrer*, 334 U.S. 343, 350-352 (1948), and *Coe* v. *Coe*, 334 U.S. 378, 384 (1948).

---

[4] Ariz. Rev. Stat. § 25-311 (1956), as in effect prior to 1973 Ariz. Sess. Laws c. 139, §§ 1, 2.  In 1973, Arizona enacted a comprehensive amendment of its statutes governing dissolution of marriage, which changed the residency requirement to ninety days.  See now Ariz. Rev. Stat. § 25-312 (1976).

[5] That Arizona has reduced its residency requirement to ninety days is perhaps suggestive on this score.  See note 4, *supra*.

3. *Other bases for jurisdiction under G. L. c. 223A.* Under G. L. c. 223A, § 2, "A court may exercise personal jurisdiction over a person domiciled in . . . this commonwealth as to any cause of action." The long years of connection with Holyoke, the purchase of a marital domicil there in 1971, and the maintenance of voting registration there through 1972 pointed heavily to the characterization of George as a domiciliary of Massachusetts at the time the support order was entered in 1972. If a person has a domicil in one place for a given purpose, he cannot have one elsewhere for the same purpose. "[W]hat the law means by domicil is the one technically preeminent headquarters, which, as a result either of fact or of fiction, every person is compelled to have in order that by aid of it certain rights and duties which have been attached to it by the law may be determined." *Bergner & Engel Brewing Co.* v. *Dreyfus,* 172 Mass. 154, 157 (1898). Once acquired, a domicil is not lost until a new one is obtained, "and the original domicil is presumed to have continued in the absence of compelling evidence that it was changed." *Dane* v. *Registrars of Voters of Concord,* 374 Mass. 152, 162 (1978). We also view the acquisition of the home in Holyoke and the settling of his family there in 1971 as satisfying the "minimum contacts" test of *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 (1945), and affording the basis for jurisdiction under G. L. c. 223A, § 3(*a*). See *Ross* v. *Ross,* 371 Mass. 439, 441-442 (1976) ("'[T]ransacting any business in this commonwealth'" applies to noncommercial activity and includes acts which relate to marriage). Compare *Kulko* v. *Superior Court,* 436 U.S. 84, 86-92 (1978).

George not having briefed on appeal the question whether he is barred from further litigating the validity of the Arizona decree in subsequent proceedings in the Probate Court, we take the point as conceded and do not comment on it further. Similarly in the absence of any briefing by him on the issue of George's rights under the Soldiers' and Sailors' Civil Relief Act of 1940,[6] we consider that issue

---

[6] 50 U.S.C. App. § 501 et seq. (1976).

waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Kipp* v. *Kueker,* 7 Mass. App. Ct. 206, 212 (1979).

On the questions reported, therefore, we answer: that the defendant George D. Kennedy is subject to the jurisdiction of the Probate Court under G. L. c. 223A, §§ 2, 3(*a*), and by the retroactive application of § 3(*g*); that George did not satisfy the residence conditions of Arizona law and the divorce decree there granted is, therefore, not valid. The case is to stand for further proceedings in the Probate Court concerning the amount to be paid by the defendant to the plaintiff and whether the defendant's wages should be garnished or attached under 42 U.S.C. § 659 (1976).

*So ordered.*