SUSAN ANN BULLOCK *vs.* GLENN W. ZEIDERS
(and a companion case[1]).

Middlesex.  October 15, 1981. — November 23, 1981.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Divorce and Separation,* Modification of judgment, Amendment of
pleadings. *Laches.*

In a proceeding for modification of a divorce decree, there was sufficient
basis for a finding by a probate judge that the wife had not waived a
cost of living adjustment provision in the separation agreement.
[635-636]
In proceedings for contempt and for modification of a divorce decree
there was no merit to the husband's contention that his former wife's
long delay in challenging his failure to comply with a cost of living ad-
justment provision in the separation agreement barred her from bring-
ing a complaint for contempt. [636-637]
In proceedings for contempt and for modification of a divorce decree the
probate judge did not err in denying the husband's motions to amend
his pleadings and to reopen trial and in awarding counsel fees and
costs to the wife's attorney. [637-638]

LIBEL for divorce filed in the Probate Court for the coun-
ty of Middlesex on January 14, 1969.

Complaints for contempt and for modification of the
divorce decree were filed on January 16, 1980, and were
heard by *Keville, J.*

*Gerald L. Nissenbaum* for the defendant.
*Louis A. Guidry* for the plaintiff.

KASS, J.  Ten years after entry of a decree[2] of divorce nisi
on December 29, 1969, which incorporated by reference a

---

[1] The companion case is between the same parties.

[2] Prior to the effective date of the Mass.R.Dom.Rel.P., July 1, 1975, the
word "decree" was used, rather than "judgment."

carefully wrought separation agreement entered into by the parties, Susan Ann Bullock (the former Susan Ann Zeiders) filed a complaint for contempt and simultaneously Glenn W. Zeiders filed a complaint for modification of his obligations under the decree. A Probate Court judge entered a judgment for contempt and a judgment dismissing the complaint for modification. From those actions Zeiders appealed.

Thereafter, new counsel for Zeiders moved to amend the husband's complaint for modification and his answer to the complaint for contempt, and to re-open trial. All those motions were denied and from those denials Zeiders also appeals. We affirm.

The original agreement between the parties required the husband to make support payments of $180 per month until the wife remarried or any of the children were emancipated (a term defined in the agreement). Should the wife remarry, the monthly payments were to fall to $120 per month. She did, in fact, remarry in May, 1972, and the husband reduced the weekly payments to $120. The agreement also provided that the husband's obligations were to be adjusted in accordance with the Consumer Price Index.[3] Under section 4B, the husband agreed to pay for his two children's college education "commensurate with his ability to do so at such time." The failure of the husband to comply with the adjustment provision has provoked the controversy.

1. *Oral amendment of the agreement.* It is Zeiders's contention that he and Bullock had a conversation, shortly after Bullock remarried, in which she agreed to waive the cost of living adjustment provision. After trial, the probate judge found that the conversation testified to by the husband did

---

[3] The pertinent language of the agreement appears in section 6F, and provides: "The Husband's obligations hereunder shall be subject to annual percentage increases or decreases, corresponding to increases or decreases (as the case may be) above or below the October, 1969 average for all items set forth in The Consumer Price Index, Table D-1 published by the Bureau of Labor Statistics of the United States Department of Labor (or any successor index to it) and the determination of any such increase or decreases shall be made as of January 1 of each calendar year beginning January 1, 1971, and shall be effective for the payments throughout that year."

not take place, that Bullock did not waive the adjustment provision, and that, indeed, she had on several occasions pressed her former husband to comply with it. There was sufficient basis for these findings in the record and we do not set them aside unless clearly erroneous. Mass.R.Dom. Rel.P. 52(a).[4] Certainly we are not, upon review of the evidence, "left with the definite and firm conviction that a mistake has been committed." *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). See *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 309 (1981). This is especially so when the trier of fact must sort out who is testifying accurately or truthfully. See *Matsushita Elec. Corp. of America* v. *Sonus Corp.*, 362 Mass. 246, 254 (1972).

2. *Laches.* Zeider urges that his former wife's long delay in bringing the matter of the cost of living escalator to a head estopped her from bringing a complaint for contempt. The argument is founded on a theory of laches. But the defense of laches cannot be made out merely on the basis of delay; the person claiming the defense must also show that prejudice flowed from the delay. *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 278 (1970). *Erickson* v. *Waltham*, 2 Mass. App. Ct. 436, 450-451 (1974). Acquiescence, too, is an element of laches, *id.*, but here the judge found expressly that Bullock "on many occasions requested of the husband that he comply with the increased payments of support, and that he not only refused to comply with her request but in essence threatened to move elsewhere and cut off all payments if he were pressed." See also *Jamesbury Corp.* v. *Worcester Valve Co.*, 443 F.2d 205, 210 (1st Cir. 1971).

---

[4] Mass.R.Dom.Rel.P. 52(a) differs from Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), in that a judge sitting without a jury is not required to make findings of fact unless a party so requests by written motion before final argument and a party has requested the appointment of a stenographer pursuant to Rule 202 of the Probate Courts. Zeiders did not ask for findings until after judgment had been entered. That the judge honored the late request for findings has much facilitated review of the case. Cf. *King* v. *King*, 373 Mass. 37, 40 (1977).

Prejudice might possibly ensue in a case where, during a period of delay, a person undertook different financial commitments which left him bereft of assets to meet an arrearage that had accumulated. Such facts could present a change in circumstances which would justify modification of a judgment for support. That, however, is not our case. The judge found that Zeiders' annual income from his employment had increased from approximately $20,000 at the time of the divorce to $60,000 at the time of the hearing on the cross complaints for contempt and modification. His ability to meet the terms of the original agreement had not deteriorated. The needs of his children had not varied from those which had been foreseen. The judge also found that Zeiders had additional income and other assets and that Zeiders "is readily able to comply with the financial requirements of the agreement which was incorporated by reference in the Judgment Nisi."

It is difficult to imagine facts in a case dealing with alimony and support payments where the consequences of a delayed claim would not ultimately be subsumed in whether the circumstances of the parties had so changed as to require a modification of the earlier judgment. That, of course, is the basic question in any modification case which comes before a probate judge. G. L. c. 208, § 37. *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961). *Pagar* v. *Pagar*, 9 Mass. App. Ct. 1, 2-3 (1980). See *Brown* v. *Greenlow*, 330 Mass. 88, 89-90 (1953); Lombard, Family Law § 2085 (1967).

3. *Denial of the various motions.* When Zeiders moved to amend his pleadings, judgment had already entered in both the contempt case and the modification cases. While, under Mass.R.Dom.Rel.P. 15(b), a motion to amend the pleadings to conform to the evidence may be made even after judgment, the timing of a motion to amend is a factor which may be taken into consideration. *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 291-292 (1977). To the extent Zeiders's proposed amendments introduced a substantially different theory into the case, the mo-

tions could have been properly denied. *Id. Genesco* v. *Koufman*, 11 Mass. App. Ct. 986, 989 (1981). Compare *Evans Prod. Co.* v. *D.J. Dev. Corp.*, 6 Mass. App. Ct. 306, 309 (1978). To the extent the amendments added no issues not already before the court (which, on our reading of the proposed amendments, was the case), there was good reason to disallow them. There was no abuse of discretion in disallowing the motion to re-open trial.

4. *Counsel fees.* On the record, there is nothing untoward about the award of $2,635.80 in counsel fees and costs to Bullock's lawyer. The fees seem entirely reasonable and were a good deal less than what Bullock's lawyer had requested.

*Judgments affirmed.*

*Denials of the motions to amend the complaint for modification, to amend the answer to the complaint for contempt, and to reopen trial affirmed.*