LILLIAN FRANCES KENNEDY *vs.* GEORGE DAY KENNEDY.

Hampden.  October 12, 1983. — December 27, 1983.

Present: HALE, C.J., BROWN, & PERRETTA, JJ.

*Husband and Wife,* Separate support.  *Contempt.*

Although a Probate Court judge, in a 1982 proceeding against a husband
for contempt of a separate support order entered in 1972, had the
power to modify the order both prospectively and by cancelling a por-
tion of the arrearages due, he could properly do so only after determin-
ing that there had been a material change in the circumstances of the
parties since the entry of the original order, and it was error for the
judge instead to base the modification upon a reconsideration of the
merits of the 1972 proceeding, in which the husband had had an op-
portunity to participate.  [312-314]

The amount sought by a wife on a petition under the Uniform Reciprocal
Enforcement of Support Act would have no relevance to the husband's
claim that changed circumstances warranted modification of a pre-
existing separate support order.  [314-315]

A husband's delay in seeking modification of a separate support order did
not result in a waiver of his right to seek modification.  [315]

PETITION filed in the Probate Court for the county of
Hampden on June 8, 1972.

Following the decision of this court in 10 Mass. App. Ct.
113 (1980), further proceedings were heard by *Rodgers,* J.

COMPLAINTS for divorce filed in the Hampden Division of
the Probate and Family Court Department on September 4,
1981, and December 2, 1981, respectively.

The cases were heard by *Rodgers,* J.

*William C. Newman* (*Wendy Sibbison* with him) for Lil-
lian Frances Kennedy.

*James M. Walsh* for George Day Kennedy.

HALE, C.J.  These are cross appeals from judgments and
orders entered in the Probate and Family Court for Hamp-
den County following hearings ordered in *Kennedy* v. *Ken-*

nedy, 10 Mass. App. Ct. 113 (1980). The principal issue
that we address on appeal is whether the probate judge erred
in cancelling a portion of the arrearages while adjudicating
the defendant in contempt for failing to obey a 1972 support
order.

Since the judge reported his findings of fact and conclu-
sions of law and we have a transcript of all the evidence, all
issues of law, fact, and discretion are open to review. *Krokyn*
v. *Krokyn*, 378 Mass. 206, 208 (1979). *Schuler* v. *Schuler*, 382
Mass. 366, 368 (1981). *Pagar* v. *Pagar*, 9 Mass. App. Ct. 1,
2 (1980). Moreover, we may make such additional findings
of fact as we deem to be justified by the evidence. *Pagar* v.
*Pagar, supra.*

We summarize the prior proceedings and background
facts.[1] Additional facts will be discussed when relevant to
the opinion. Lillian Frances Kennedy (Lillian) and George
Day Kennedy (George) were married in Holyoke in Decem-
ber, 1956. During the early years of the marriage and even
after the birth of the first of five children in June, 1957, Lil-
lian worked to support the family while George attended
the University of Massachusetts and enrolled in a Reserve
Officers Training Corps program. In September, 1959,
George went on active duty as an officer in the United
States Air Force, and from 1959 to 1970 the family lived in
various States where George was assigned. During this
period, the marriage deteriorated, and the parties were at
times physically abusive toward each other. In June, 1970,
the family was living in California when George left on
assignment to Korea. Upon his return to California in the
late summer of 1971, the family drove cross-country and
purchased a house in Holyoke. Before departing for duty in
Arizona in late October, 1971, George reached an oral
agreement with Lillian whereby George would send $850 a
month for the support of his wife and children, the same
amount he was sending while he was stationed in Korea.

---

[1] Further facts regarding the parties are reviewed in *Kennedy* v. *Ken-
nedy*, 10 Mass. App. Ct. at 114-115.

George voluntarily complied with that agreement until September, 1972.

In June, 1972, Lillian filed a petition for separate support in the Probate Court for Hampden County. On July 11, 1972, George acknowledged receipt of the citation of that action, and the following day he filed a complaint for divorce in Arizona. A decree was entered on that complaint on August 29, 1972. Under its terms, George was to pay Lillian $500 a month for the support of the five minor children. Meanwhile, the Hampden proceedings were continuing, and a decree for separate support was entered there on September 25, 1972, ordering George to pay $250 a month for the support of Lillian and $600 a month for the support of the five children.

When George left for Arizona in October, 1971, he was earning in excess of $15,000 a year and Lillian was unemployed. For the next six years, Lillian worked as a "proofreader of checks." In 1973, she earned $5,139, with a net weekly pay of $68.68. She has been continuously employed since 1972, and by 1981 was earning $14,500 a year as a secretary.

In 1972, George's base salary from the Air Force was $15,390. George also received additional tax free income that totalled over $3,000.[2] His annual income has steadily increased over the years and in 1981, was $65,000.[3]

When the Arizona decree was issued, George immediately reduced his monthly payments to $500.[4] He unilaterally reduced monthly payments in June, 1975, to $400 when his

---

[2] For each year from 1972 to and including 1975, George received in excess of $3,000 from the Air Force in the form of basic allowances for quarters and subsistence.

[3] The $65,000 is comprised of $15,000 for retirement pension from the Air Force (he retired as a Lieutenant Colonel) and $50,000 for his work overseas as sales manager for an American firm.

[4] Shortly after the Arizona divorce, George remarried. Since we held in *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. at 120, that the Arizona divorce decree was invalid, the status of George's remarriage is brought into question. Nonetheless, because the issue is not before us, we do not address the validity of George's second marriage. See G. L. c. 207, § 4.

eldest child turned eighteen and, as two other children turned eighteen, he reduced payments in September, 1976, to $300 and in March, 1978, to $200.[5]

In September of 1973, George filed a special appearance in the Probate Court for Hampden County and a petition to vacate the order to pay $850 a month for failure of jurisdiction over his person. He brought that petition forward to hearing only after Lillian had filed a motion for attachment or garnishment of his pay in March, 1978. On reservation and report from the Probate Court, we determined that: (1) George was subject to the jurisdiction of the Massachusetts Probate Court; (2) the 1972 Arizona divorce decree was invalid because George did not satisfy Arizona residency requirements; and (3) George was barred from further litigating the validity of the Arizona divorce decree at subsequent evidentiary hearings. *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. at 119-120. The case was returned to the Probate Court for further proceedings "concerning the amount to be paid by the defendant to the plaintiff and whether the defendant's wages should be garnished or attached under 42 U.S.C. § 659 (1976)." *Id.* at 120.

After this court's *Kennedy* opinion was issued, Lillian filed a complaint for contempt alleging that George had failed to comply with the 1972 separate support order and owed arrearages of $45,900. She also filed a complaint for divorce. Subsequently, George filed a complaint for modification and a complaint for divorce. On April 26, 1982, after five days of hearing, the probate judge made, among others, the following decisions: (1) the complaint for modification was dismissed; (2) a judgment of contempt was entered against George for failure to comply with the 1972 order, but no penalty was assessed; (3) the arrearages were

---

[5] There is no evidence in the record that George ever paid anything toward his children's education. On the other hand, in 1980, George arranged for his company to pay $8,000 for the private school education of a child of his second "wife." See *supra*, note 4. For the 1981-1982 academic year George was paying $2,000 tuition costs for the same child to attend a college in Athens, Greece.

set at $27,050, reduced from $57,050 because he found the 1972 separate support order to be "excessive"; (4) the parties were each granted a divorce on the basis of cruel and abusive treatment; (5) the defendant was ordered to pay $150 a week, totalling over $600 a month, for the support of two children and to maintain life and medical insurance for them as well as to pay all medical and dental expenses not covered by insurance[6]; (6) the plaintiff's complaint for attachment was dismissed; and (7) the plaintiff's motion for attorney's fees was denied.

The parties cross appealed, assigning as error various aspects of the proceedings, orders and judgment. Except for the reduction of the arrearages, we conclude that the probate judge's actions challenged on appeal were either well within his discretion or that the parties' assertions of certain alleged errors do not rise to the level of appellate argument. See *Trani's Case,* 4 Mass. App. Ct. 857, 858 (1976); *Stokosa* v. *Waltuch,* 6 Mass. App. Ct. 975 (1979).

1. *Reduction of Arrearages.*

A Probate Court has power to modify a support order in the context of either a complaint for contempt or a complaint for modification. *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. 9, 13 (1980). This power may be exercised not only as to future obligations, but also as to arrearages. *Watts* v. *Watts,* 314 Mass. 129, 133 (1943). *Orlandella* v. *Orlandella,* 370 Mass. 225, 230 (1976). *Manes* v. *Manes,* 370 Mass. 235, 237 (1976). *Feakes* v. *Bozyczko,* 373 Mass. 633, 638 n.5 (1977). *Dumont* v. *Godbey,* 382 Mass. 234, 240 (1981). *Bloksberg* v. *Bloksberg,* 7 Mass. App. Ct. 233, 234-235 (1979). In certain cases, a probate judge may both enter a judgment of contempt and cancel a portion of the arrearages.[7] *Barreda* v. *Barreda,* 16 Mass. App. Ct. 918

---

[6] Reductions in these orders were provided when these children attained majority or when they reached the age of twenty-one so long as either or both were pursuing a college education.

[7] Before entering a judgment for civil contempt a probate judge must first determine that the defendant has the present ability to pay the amount of the judgment. See *Salvesen* v. *Salvesen,* 370 Mass. 608, 611

(1983) (A Probate Court adjudicated the defendant in contempt for failure to obey two child support orders and at the same time reduced the arrearages by over $7,700 to account for the period of time each child resided with him). Nevertheless, a court may not make a modification unless the proponent of the reduction shows that a material change of circumstances has occurred since the entry of the earlier support order. *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961). *Schuler* v. *Schuler*, 382 Mass. at 368. *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. at 13.

In the present case, we conclude that it was error for the probate judge to reduce the arrearages from $57,050 to $27,050 without first determining whether there had been a material change of circumstances since the 1972 separate support order. The probate judge stated in his "Findings of Fact and Conclusions of Law" that "[t]he Massachusetts separate support order [of 1972] I find to be excessive." He then determined for the period from 1972 to and including 1981 that "the defendant was capable of paying $600 a month for the support of the wife and children" and established an arrearage of $27,050.

It was improper for the probate judge to reconsider the merits of the 1972 separate support order and conclude that it was "excessive" when entered. The principle announced by the Supreme Judicial Court in *Robbins* v. *Robbins*, 343 Mass. at 249, is applicable here: "The parties have had their day in court and the issue ought not to be relitigated unless there has been a change of circumstances after the entry of the original decree." George chose not to have his full "day in court" in 1972 because he assumed that the Massachusetts Probate Court lacked jurisdiction over him. He lost that issue on appeal, *Kennedy* v. *Kennedy, supra* at

(1976); *Newman* v. *Newman,* 11 Mass. App. Ct. 874 (1981). However, a dismissal of a complaint for contempt due to the defendant's present inability to pay does not relieve the defendant of his obligation to pay arrearages. See *Barreda* v. *Barreda,* 16 Mass. App. Ct. 918, 919-920 (1983). In the present case, George does not challenge the judgment of contempt on the basis of a present inability to pay arrearages.

120; we see no reason why he should have the opportunity now to relitigate the merits of the 1972 order. Further, there is nothing in the judge's findings or in the record to indicate that the 1972 separate support order was excessive or unreasonable at the time it was entered.[8] In fact, prior to the 1972 order requiring $850 in support payments, George voluntarily sent the same amount for the support of his wife and children for the year that he was stationed in Korea and for the first ten months that he was stationed in Arizona.

2. *Additional Issues.*

Because we do not hold as matter of law that there was no evidence to permit a downward modification of arrearages,[9] the case must be remanded to the Probate Court to determine whether George has demonstrated a material change of circumstances. In doing so, we make the following observations.

George argued in his brief that the decision to reduce the arrearages is supported by the following finding of the probate judge:

"In 1973, the plaintiff, Lillian, filed a reciprocal non-support [URESA] petition with the Holyoke District Court of Massachusetts. That order required the de-

---

[8] Contrast *Pierce* v. *Pierce,* 349 Mass. 762 (1965), in which a modification of a decree was necessary because the decree was plainly wrong. The facts of the present case do not permit such a finding.

[9] The only evidence which might justify a downward modification of arrearages was that several of the parties' children reached age eighteen, left home, and supported themselves. Balanced against these factors were George's rising income and the effect of inflation on Lillian. See *Mead* v. *Mead,* 2 Mass. App. Ct. 338, 340 (1974) (where husband's financial position had improved since entry of decree, downward modification unwarranted); *Thompson* v. *Thompson,* 12 Mass. App. Ct. 917 (1981) (In determining if change of circumstances had occurred, it was proper for probate judge to consider the greater burden of a cost of living increase on the wife because her income was lower than the husband's). See generally *Binder* v. *Binder,* 7 Mass. App. Ct. 751, 752-757 (1979); *Pagar* v. *Pagar,* 9 Mass. App. Ct. 1 (1980); *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. 9 (1980). In light of the increases in George's income, Lillian's salary since the 1972 order was not a material change. Compare *Thompson* v. *Thompson,* *supra* at 918.

fendant to pay $500 per month, similar to the Arizona judgment."

This URESA order has no effect upon the 1972 separate support order and is irrelevant to a change of circumstances.[10]

Lillian argues that George's delay in these proceedings since 1972 should result in a waiver of his rights to seek a modification. No waiver occurred; the issue of delay is not considered separately as one of laches but is "subsumed in whether the circumstances of the parties [have] so changed as to require a modification of the earlier judgment." *Spiliotis* v. *Campbell*, 13 Mass. App. Ct. 189, 190 (1982), quoting with approval *Bullock* v. *Zeiders*, 12 Mass. App. Ct. 634, 637 (1981).

We affirm the judgments except for the amount set for arrearages. We vacate that amount and remand to the Probate Court for additional findings, leaving to its discretion whether additional hearings are needed to determine the arrearages.[11] On an appropriate motion, the Probate Court in its discretion may also reconsider the question of counsel fees.[12]

*So ordered.*

---

[10] General Laws c. 273A, § 2, appearing in St. 1954, c. 556, § 1, of the Massachusetts Uniform Reciprocal Enforcement of Support Act states that remedies under the Act are "in addition to and not in substitution for any other remedy." Also see *M ____* v. *W ____*, 352 Mass. 704, 708-709 (1967); *Helgesson* v. *Helgesson*, 196 F. Supp. 42, 46 (D. Mass. 1961); *Sheres* v. *Engelman*, 534 F. Supp. 286, 293-294 (S.D. Tex. 1982).

[11] The probate judge will now have the benefit of the transcript which was not available when he made his initial "Findings of Fact and Conclusions of Law."

[12] See *Kirtz* v. *Kirtz*, 12 Mass. App. Ct. 141, 147-149 (1981), and G. L. c. 215, § 34A, fourth par. (Although the fourth paragraph was not in effect at the time judgments were entered in the Probate Court, the legislative policy behind it is an appropriate consideration on this remand).