LINDA A. PACKARD *vs.* RALPH A. PACKARD.

Nos. 91-P-826 & 91-P-1480.

Berkshire. November 17, 1992. - May 27, 1993.

Present: KASS, JACOBS, & PORADA, JJ.

*Contempt. Jurisdiction,* Probate Court, Contempt, Long-arm statute, Divorce proceedings, Personal. *Due Process of Law,* Jurisdiction over nonresident.

General Laws, c. 223A, § 3(*h*), as inserted by St. 1987, c. 100, authorized a Probate Court judge's assertion of personal jurisdiction over a nonresident defendant in contempt proceedings for failure to comply with child support orders in a 1986 divorce judgment, where the Probate Court had exercised personal jurisdiction over the defendant in the original divorce proceeding and the child support orders were subject to continuing reappraisal and modification by the Probate Court. [546-548]

A nonresident defendant, over whom the Probate Court exercised personal jurisdiction under G. L. c. 223A, § 3(*h*), as inserted by St. 1987, c. 100, in contempt proceedings for failure to comply with child support orders in a divorce judgment, sufficiently had contacts with Massachusetts so that there was no offense to "traditional notions of fair play and substantial justice" by the court's assertion of jurisdiction over him. [549-550]

There was no conflict between the assertion of personal jurisdiction over a defendant under the provisions of G. L. c. 223A, § 3(*h*), in a contempt proceeding to enforce child support orders in an earlier divorce judgment, and Practice VII of the Uniform Practices of the Probate Courts (1975), which concerns money orders. [550]

COMPLAINT for divorce filed in the Berkshire Division of the Probate and Family Court Department on March 12, 1986.

Complaints for contempt, filed on February 9, 1990, and December 24, 1990, respectively, were heard by *Rudolph A. Sacco,* J.

*Jack E. Houghton, Jr.,* for Ralph A. Packard.
*Dorothy L. Green* for Linda A. Packard.

JACOBS, J. The sole issue before us in these appeals is whether the Berkshire Probate and Family Court had jurisdiction over the defendant in contempt proceedings initiated by the plaintiff. We conclude that it did.

We take the facts relating to jurisdiction from the record. The parties were married in 1981 in the town of Becket in Berkshire County. According to the certificate of marriage, their residence at the time was in Becket. The defendant, then and throughout the marriage, was in the United States Army and stationed outside Massachusetts.

In 1986, the plaintiff filed a complaint for divorce, alleging that the parties last lived together in Massachusetts. After being served with a summons in West Germany, the defendant, through counsel, filed an answer admitting to the allegation of last residence. A temporary child custody and visitation order was entered during the pendency of the divorce action which stated that it was issued "[a]fter hearing . . . at which both parties were present. . . ." The temporary order was issued on the defendant's "motion for visitation," which was supported by his affidavit statement that "[s]ince I have been home I have been denied reasonable rights of visitation." A divorce judgment which was entered on July 7, 1986, incorporated a separation agreement signed by the parties and acknowledged in Massachusetts. The agreement obligates the defendant to pay $175 per month per child for support of "the two minor children of the marriage." The judgment expressly merged the agreement into its provisions and ordered that it "have no independent legal significance or survival." At some time after the divorce, the defendant left the army to reside in Kentucky.

On February 9, 1990, the plaintiff filed an "Amended Complaint for Civil/Criminal Contempt," see *Sodones* v. *Sodones*, 366 Mass. 121, 129-130 (1974), alleging that the defendant's child support arrearage was $12,950. The contempt complaint and a summons were served in hand in Kentucky on March 6, 1990. An attorney thereafter filed an answer on the defendant's behalf which denied any support

debt or obligation and raised various substantive issues.[1] No jurisdictional issue was raised. After a hearing at which the defendant was represented by counsel, "judgment of contempt" was entered, on April 9, 1990, which established a "support arrearage" in the amount of $13,650 as of that date.[2]

On December 24, 1990, the plaintiff filed a second complaint for contempt, alleging an arrearage of $2,800 for the period of May through December, 1990, and again served the defendant in Kentucky. By his answer and a motion to dismiss, the defendant, now represented by new counsel who appeared specially, contested the court's "in personam jurisdiction over him to enter an order for the payment of money." After a hearing at which the defendant was represented by counsel, the judge denied the motion to dismiss and entered a judgment that the defendant was guilty of contempt with respect to the support order of July 7, 1986, and established an arrearage of $3,500 for the period from May, 1990, through February, 1991. Separate timely appeals were entered with respect to each of the judgments and, while only the appeal from the earlier judgment was argued to us, the defendant has filed a brief in the second appeal in which he concedes a "similarity in issues" and argues only the ques-

---

[1]Both children were born prior to the marriage of the parties and had been given the plaintiff's surname. The answer alleged that the plaintiff had failed to change the children's names and had refused to allow contact with them by the defendant or his family. The answer further stated that the plaintiff, with knowledge of the consequences, had refused to hold the children out as children of the defendant, thereby rendering them ineligible to receive military benefits. It also claimed that the defendant had doubt as to the paternity of the children. By not raising the defense of lack of jurisdiction in this answer or in a motion, the defendant effectively waived that defense. Mass.R.Dom.Rel.P. 12(h)(1) (1975). *Buckley* v. *John*, 314 Mass. 719, 721-722 (1943). We nevertheless elect to entertain the appeal. See note 3, *infra*.

[2]The "judgment of contempt" contained an express finding of "no contempt." Neither party contends that the appeal is from other than a final judgment, and it is doubtful that the defendant successfully could make such a contention in the circumstances. See *Brown* v. *Quinn*, 406 Mass. 641, 645-646 (1990). In any event, we elect to entertain the appeal. See note 3, *infra*.

tion of personal jurisdiction. We, therefore, decide the jurisdictional issue in each of the appeals.[3]

A 1987 amendment to the Massachusetts long-arm statute controls the jurisdictional issue before us. General Laws c. 223A, § 3, as amended through St. 1987, c. 100, provides in pertinent part:

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (h) having been subject to the exercise of personal jurisdiction of a court of the commonwealth which has resulted in an order for child support or maintenance, notwithstanding the subsequent departure of the defendant from the commonwealth, where the plaintiff and the child continue to reside within the commonwealth and where such plaintiff is pursuing an action involving modifications of such order or the enforcement thereof."[4]

As a general matter, the remedial nature of c. 223A permits it to be applied retrospectively. *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. 680, 683-684 (1970). See *Diamond Crystal Salt Co.* v. *P. J. Ritter Co.*, 419 F.2d 147, 148 (1st Cir. 1969). Contrast *Hay* v. *Cloutier*, 389 Mass. 248, 254 (1983) (holding that G. L. c. 208, § 34, is substantive and could not be applied retroactively). The defendant

---

[3]Although the appeal in the first contempt action could be otherwise resolved, see note 1, *supra*, and the resolution of the appeal in the second action could be deferred until it is argued in the ordinary course, we elect, in the interest of judicial economy, to exercise our discretion to address the merits of the issue of jurisdiction which were fully argued and briefed. See *Cabral's Case*, 18 Mass. App. Ct. 141, 144 (1984); *McCarthy* v. *Civil Serv. Comm.*, 32 Mass. App. Ct. 166, 169 n.5 (1992); *Arch Med. Assocs., Inc.* v. *Bartlett Health Enterprises, Inc.*, 32 Mass. App. Ct. 404, 405 n.3 (1992). Upon inquiry during argument, counsel for both parties indicated they were not opposed to the court's deciding the jurisdictional issue in each of the cases.

[4]The defendant concedes that the plaintiff has resided in the Commonwealth at all relevant times. A plaintiff's residency within the Commonwealth is a prerequisite to a court's assertion of jurisdiction under G. L. c. 223A, § 3, to enforce or modify child support and marital orders. *Morris* v. *Morris*, 403 Mass. 1001 (1988). See *Tick* v. *Tick*, 403 Mass. 1002 (1988); *Westcott* v. *Westcott*, 407 Mass. 1002 (1990). No contention is made that the minor children of the parties have not continued to reside in the Commonwealth.

argues, however, that the 1986 divorce is a closed case, and, therefore, beyond the retrospective reach of the later inserted § 3(*h*). See *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 627 (1974); *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 88-89 (1979). He attempts to distinguish *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. 113 (1980), in which this court held that an order for separate support under G. L. c. 209, § 32, was subject to the retrospective application of G. L. c. 223A, § 3(*g*),[5] by focusing on the finality of a divorce judgment. In *Kennedy* v. *Kennedy*, the court concluded that the "requisite degree of finality" had not been reached, even if the order in question had been the product of an agreement, because separate support orders are "subject to continuing reappraisal and modification by the Probate Court." *Id.* at 116-117.

By statute a child support order in a divorce judgment is no less susceptible of modification than a separate support order. General Laws c. 208, § 28 (1986 ed.), provides in pertinent part "[u]pon a complaint after a divorce . . . the court may make a judgment modifying its earlier judgment as to the care, custody and maintenance of the minor children of the parties provided that the court finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children." That modifiable state persists, notwithstanding that a child support order may have been based on a valid agreement of the parties which, as in this

---

[5]General Laws c. 223A, § 3(*g*), provides:

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (*g*) living as one of the parties to a duly and legally executed marriage contract, with the marital domicile of both parties having been within the commonwealth for at least one year within the two years immediately preceding the commencement of the action, notwithstanding the subsequent departure of the defendant in said action from the commonwealth, said action being valid as to all obligations or modifications of alimony, custody, child support or property settlement orders relating to said marriage or former marriage, if the plaintiff continues to reside within the commonwealth."

case, did not survive the divorce judgment as an independent legal contract. *DeCristofaro* v. *DeCristofaro,* 24 Mass. App. Ct. 231, 235 (1987).

Intrinsic to the long-arm provisions of § 3(*h*) is the principle that once a court obtains jurisdiction of the parties in a marital proceeding and issues a valid child support order, the departure of one of the parties from the Commonwealth alone does not divest the court of jurisdiction. See Restatement (Second) of Conflict of Laws § 26 illustration 1 (1989). This concept recognizes the unique nature of the ongoing obligations created by valid child support orders and the logic of permitting the court that issued those orders to oversee their modification and enforcement. See *Bjordahl* v. *Bjordahl,* 308 N.W.2d 817, 818-819 (Minn. 1981). Even before the insertion, by St. 1987, c. 100, of § 3(*h*), this court noted that "there are persuasive arguments in favor of [the principle of] continuing jurisdiction." *Winternitz* v. *Winternitz,* 19 Mass. App. Ct. 228, 231 n.3 (1985).[6]

"Generally, a claim of personal jurisdiction over a non-resident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses." *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 5-6 (1979). See *Heins* v. *Wilhelm Loh Wetzlar Optical Machinery GmbH & Co. KG,* 26 Mass. App. Ct. 14, 16 (1988). Given that the child support order that the plaintiff seeks to enforce emanates from a divorce action in which the Probate Court exercised personal jurisdiction over the defendant, there is no question that the assertion of similar jurisdiction in the contempt actions brought in the same court is authorized by G. L. c. 223A, § 3(*h*).

---

[6]General Laws c. 208, § 36A, inserted by St. 1982, c. 481, § 1, which expressly recognizes the "continuing jurisdiction" of a court that enters a support order for purposes of reaching the disposable earnings of an obligor by trustee process.

We turn, therefore, to the due process aspect of the inquiry, which here rests largely, but not entirely, upon whether the literal requirements of § 3(*h*) function as "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 443 (1972). Those requirements, grounded on valid personal jurisdiction over a defendant in an underlying action and buttressed by the residency within the Commonwealth of the beneficiaries of a child support order which was entered in that action, are not in violation of those limits. However, due process scrutiny requires that our analysis look beyond the literal requirements of the long-arm statute. *Good Hope Indus., Inc.* v. *Ryder Scott Co., supra* at 6. We must be satisfied that the defendant has had such "minimum contacts" with Massachusetts "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945), quoting from *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940), or that the defendant "purposefully avail[ed himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958). *Good Hope Indus., Inc.* v. *Ryder Scott Co., supra* at 7.

The activities of the defendant, in combination, meet these tests. By marrying and residing in Becket, by "coming home" during the pendency of the divorce action and by executing the separation agreement and submitting it to the Probate Court, the defendant sufficiently has made contact with Massachusetts so that no reasonable notions of fair play and substantial justice are offended by contempt proceedings against him to enforce the provisions of that agreement. See *Ross* v. *Ross*, 371 Mass. 439, 441-442 (1976). Moreover, his submission of the agreement and his earlier visitation motion to the Probate Court not only constitute invocations of the benefits and protections of the laws of this jurisdiction but also occurred with respect to the very proceedings which

gave rise to the obligations which are the subject of the contempt actions. "[B]asic considerations of fairness point decisively" to Massachusetts as the proper forum for the adjudication of these cases. *Kulko* v. *Superior Court*, 436 U.S. 84, 97 (1978). The lapse of approximately three and one-half and four and one-half years, respectively, between the entry of the divorce judgment and the filing of the contempt actions is insufficient to support the defendant's contention that the passage of time since the defendant's last contacts with Massachusetts somehow weakens this State's jurisdictional grip on him. We need not consider temporal limits other than to indicate they have not here been reached. Compare Restatement (Second) of Conflict of Laws § 26 comment b (1989); *Bjordahl* v. *Bjordahl, supra* (the court found continuing jurisdiction to enforce a nine year old divorce judgment against a defendant who had not resided in or had business contact with the forum State for twenty-two years).

The defendant claims that c. 223A, § 3(*h*), is inconsistent with Practice VII of the Uniform Practices of the Probate Courts (1975)[7] and, relying on the authority of *Huber* v. *Huber*, 408 Mass. 495 (1990), claims that the Practice prevails. The argument overlooks the fact that Practice VII speaks to the entering of money orders while the contempt judgments before us involve the enforcement of previously entered child support orders originating in an earlier proceeding. In the circumstances, there is no conflict.

*Judgments affirmed.*

---

[7]Practice VII Uniform Practices of the Probate Courts provides:

"No money order will be entered against a defendant who has not been served with process within the Commonwealth and does not appear, although his property within the Commonwealth may be attached in accordance with law, and made to report to the satisfaction of a judgment valid only as against such property, unless a summons has been served upon such non-resident at his post office address within the Commonwealth by registered or certified mail."