CONSTANCE BEAULIEU *vs.* HENRY J. BEAULIEU, JR.

No. 97-P-1659.

Middlesex. January 12, 1999. - May 26, 1999.

Present: GREENBERG, KAPLAN, & LENK, JJ.

*Divorce and Separation,* Child support, Alimony. *Jurisdiction,* Divorce
proceedings, Personal, Nonresident, Long-arm statute. *Due Process of Law,*
Jurisdiction over nonresident.

The Probate Court could properly assert personal jurisdiction, under G. L.
c. 233A, § 3(*h*), over a nonresident husband, who essentially left Mas-
sachusetts in 1976 and presently resides in Arizona, for his failure to pay
alimony to the resident wife pursuant to an order in a 1974 Massachusetts
divorce judgment [851-852], and no reasonable notions of fair play or
substantial justice were offended by contempt proceedings to enforce the
order entered in that divorce action, which the husband had himself initi-
ated [852-853].

PETITION filed in the Probate Court for the county of Middle-
sex on March 11, 1974.

A complaint for contempt, filed on December 4, 1996, was
heard by *Judith Nelson Dilday,* J., on a motion to dismiss.

  *Richard E. Manelis* for the plaintiff.

  *Michael P. Murray* for the defendant.

LENK, J. In 1996, more than twenty-two years after her
divorce, the appellant, Constance Beaulieu (wife), brought a
complaint for contempt against her former husband, Henry J.
Beaulieu, Jr. (husband), for protracted noncompliance with the
child support and alimony provisions of a 1974 Massachusetts
divorce judgment. The husband left Massachusetts shortly after
the divorce and has essentially not returned. A Probate and
Family Court judge allowed the husband's motion to dismiss
for lack of personal jurisdiction brought pursuant to Mass.R.
Dom.Rel.P. 12(b)(2) (1975). The wife appeals, but only as to
the dismissal of her complaint for the husband's failure to pay
alimony. We reverse.

The husband filed for and was granted a Massachusetts judgment of divorce made absolute on November 13, 1974. Both husband and wife were residents of Massachusetts at the time. As part of the divorce judgment, the wife was awarded custody of the couple's three minor children with reasonable rights of visitation to the husband. The husband was ordered to pay eighty dollars each week in child support, and to "pay the mortgage, principal, interest and taxes, home insurance[,] . . . utilities, not including telephone . . . and reasonable medical and dental expenses." The wife claims that the husband did not make the ordered payments and is in significant arrears. While the wife remained in Massachusetts following the divorce, the husband left the Commonwealth in 1976, returning once in the early 1980's, and currently resides in Arizona. The three children of the marriage are now all grown, the youngest having reached majority in 1987.

In order to establish personal jurisdiction over a nonresident defendant, there must be statutory authorization for the exercise of personal jurisdiction and, if there is such authorization, the exercise of personal jurisdiction must be consistent with basic due process requirements mandated by the United States Constitution. *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass 1, 6-7 (1979). General Laws c. 223A, § 3, as amended through St. 1993, c. 460, § 86, the Massachusetts long-arm statute, provides in pertinent part that:

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (*h*) having been subject to the exercise of personal jurisdiction of a court of the commonwealth which has resulted in an order of alimony, custody, child support or property settlement, notwithstanding the subsequent departure of one of the original parties from the commonwealth, if the action involves modification of such order or orders and the moving party resides in the commonwealth, or if the action involves enforcement of such order notwithstanding the domicile of the moving party."

Although the divorce was entered in 1974, G. L. c. 223A may be retrospectively applied, *Packard* v. *Packard*, 34 Mass. App. Ct. 543, 546 (1993); consequently we look to the statute with its 1993 amendment.

Section 3(*h*) provides the statutory authorization for the exercise of personal jurisdiction over the nonresident husband in this contempt proceeding, where the wife seeks enforcement of an alimony order entered by a court indisputably having at the time personal jurisdiction over both the husband and the wife. Like separate support and child support orders, see *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. 113, 116-117 (1980), and *Packard* v. *Packard*, 34 Mass. App. Ct. at 547, the alimony ordered here is subject to modification, G. L. c. 208, § 37, is accordingly not final, and is subject to the retrospective application of § 3(*h*). Unlike the husband's child support obligation which terminated in 1987 by reason of the youngest child's majority, the husband's alimony obligation is ongoing. Compare *Heider* v. *Heider*, 34 Mass. App. Ct. 634, 636-638 (1993). Section 3(*h*) permits the exercise of continuing personal jurisdiction over the husband in these circumstances.

The remaining issue is whether the exercise of personal jurisdiction authorized by § 3(*h*) is consistent with constitutional due process. While the Probate Court judge found the statutory basis for personal jurisdiction, she determined that the requirements of constitutional due process had not been met. We disagree. The resolution of the issue turns upon whether the husband's minimum contacts with the Commonwealth are such that "the maintenance [of this contempt proceeding] does not offend 'traditional notions of fair play and substantial justice.' *Milliken* v. *Meyer*, 311 U.S. 457, 463 [1940]." *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945). *Mannor* v. *Mannor*, 46 Mass. App. Ct. 46, 50-51 (1998). The activities of the husband meet this test.

The husband lived in Massachusetts and initiated divorce proceedings in the Commonwealth which resulted in the 1974 judgment and its attendant and continuing obligation upon him to pay alimony. The wife's enforcement action arises from that very proceeding, which the husband initiated. His subsequent and lengthy voluntary departure from the Commonwealth neither attenuates nor eradicates the substantiality of these contacts with Massachusetts. The husband does not complain of insufficient service, and we presume he has had reasonable notice and opportunity to be heard. No reasonable notions of fair play and substantial justice are offended by contempt proceedings against him to enforce the alimony provisions of

the 1974 judgment. Compare Restatement (Second) of Conflict of Laws § 26 (1971).[1]

The husband's request for counsel fees is denied, and the matter is remanded to the Probate Court for further proceedings.

*Judgment reversed.*

---

[1]That section provides: "If a state obtains judicial jurisdiction over a party to an action, the jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action. Reasonable notice and reasonable opportunity to be heard must be given the party at each new step in the proceeding." See illustration 1 to the section.

NOTE.

The next page is purposely numbered 901. The intervening page numbers were intentionally omitted in order to make it possible to publish this material with *permanent* page numbers, thus making official citations available upon publication of the preliminary prints of these Reports.

# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* LUIS C. CARDOSO. No. 97-P-1047. December 3, 1998. *Search and Seizure,* Threshold police inquiry, Automobile. *Constitutional Law,* Search and seizure.

A State trooper stopped a car, in which the defendant was the front seat passenger, on a State highway in Brockton at 9:30 A.M. on September 14, 1996, for lack of an inspection sticker. Although the driver of the car promptly produced his license, the trooper focused his attention on the defendant, who was "fidgeting quite a bit in his seat." The defendant's head was moving side to side, his shoulders were moving, his feet were moving, he kept his hands tight to his body, and he would not make eye contact with the trooper. The defendant's "unusual" movements made the trooper fear for his safety. He "felt as if [the defendant] was hiding something" and asked the defendant to get out of the car. A search of the defendant revealed a handgun in the defendant's waistband under his loose-fitting sweat shirt. Finding that the trooper's "reason for pat-frisking the defendant was based on a hunch rather than reasonable articulable circumstances," a District Court judge allowed the defendant's motion to suppress the gun.

"It is well settled that a police inquiry in a routine traffic stop must end on the production of a valid license and registration unless the police have grounds for inferring that 'either the operator or his passengers were involved in the commission of a crime . . . or engaged in other suspicious conduct' " (citation omitted). *Commonwealth* v. *Torres,* 424 Mass. 153, 158 (1997). Here, the driver did produce a valid license and there is nothing in the record concerning the production or lack thereof of the car's registration. Therefore, neither the license nor the registration provided authority for the "stop and frisk."

We must then ask "whether a reasonably prudent [person] in the [trooper's] position would [have] be[en] warranted in the belief that the safety of the police or that of other persons was in danger." *Commonwealth* v. *Silva,* 366 Mass. 402, 406 (1974). See *Terry* v. *Ohio,* 392 U.S. 1, 27 (1968). The officer must have a "reasonable suspicion that criminal activity was afoot." *Commonwealth* v. *Torres,* 424 Mass. at 159. "A mere 'hunch' is not enough. Simple good faith on the part of the officer is not enough." *Commonwealth* v. *Silva,* 366 Mass. at 406.

On the evidence here, the District Court judge, who had the advantage of hearing the trooper's testimony, reasonably could conclude that there was not "a legally sufficient basis . . . in terms of reasonable suspicion grounded in specific, articulable facts" to support the search of the defendant. *Commonwealth* v. *Torres,* 424 Mass. at 158. As counsel for the defendant argued