EILEEN F. LOMBARDI[1] vs. DANTE C. LOMBARDI, JR.

No. 05-P-1709.

Worcester. September 7, 2006. - March 12, 2007.

Present: GRASSO, COWIN, & TRAINOR, JJ.

*Practice, Civil,* Interlocutory appeal. *Divorce and Separation,* Jurisdiction, Child support, Alimony. *Jurisdiction,* Nonresident, Child support. *Laches.*

This court entertained an appeal from interlocutory rulings that were not ripe for appeal, where the issues had been briefed and argued, cases pointed in different directions, and little would be gained by requiring that the parties return at a later date to engage in essentially the same appeal. [410-411]

In a contempt proceeding by the wife seeking enforcement against the husband of child support and alimony provisions contained in a judgment of divorce nisi, the Probate and Family Court judge erred in allowing the husband's motion to dismiss the complaint with respect to the claim for child support, despite the fact that the youngest child had reached majority years before this action was brought, where under G. L. c. 119A, § 13(*a*), child support orders remain enforceable for the purpose of collecting delinquent amounts notwithstanding that the order has expired because the child has attained majority [411-416]; on the other hand, the judge properly denied the husband's motion to dismiss the complaint with respect to the alimony claim, where the alimony obligation was ongoing and maintenance of the proceeding did not offend traditional notions of fair play and substantial justice, and where the doctrine of laches did not bar the wife's claim [416-418].

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on August 20, 1974.

A motion to dismiss a complaint for contempt filed on October 28, 2004, was heard by *Gregory V. Roach,* J.

*Robert E. Amorello* for Dante C. Lombardi, Jr.

*William Y. Chaika* for Eileen F. Lombardi.

COWIN, J. The plaintiff, Eileen F. Lombardi (the wife), filed a complaint for contempt on October 28, 2004, seeking enforce-

[1] Also known as Eileen F. Sullivan.

ment against the defendant, Dante C. Lombardi, Jr. (the husband), of child support and alimony provisions contained in a judgment of divorce nisi entered on July 6, 1976.[2] A judge of the Probate and Family Court, on the strength of *Heider* v. *Heider*, 34 Mass. App. Ct. 634, 636-637 (1993), allowed the husband's motion to dismiss the complaint for lack of personal jurisdiction with respect to the claim for child support. The judge denied the husband's motion to dismiss with respect to the wife's claim for alimony, citing *Beaulieu* v. *Beaulieu*, 46 Mass. App. Ct. 850, 852 (1999). The parties filed cross appeals.[3] We conclude that the holding of the *Heider* decision has been superseded by statutory and case law, and we accordingly reverse that portion of the order that dismissed the wife's claim for child support. We affirm the remainder of the order.

1. *Background.* The relevant facts appear to be undisputed. The parties were married on December 19, 1964. Three children were born of the marriage, the youngest on December 28, 1970. The wife filed for divorce on August 20, 1974.[4] On July 6, 1976, a judgment of divorce nisi entered. It was ordered that the husband pay $110 each week in child support; $50 each week in alimony; and reasonable medical and dental expenses. The judgment also authorized the husband to visit with the children one weekend each month.

On January 5, 1977, the wife filed a complaint for contempt alleging that the husband was in arrears in support payments in the amount of $865.[5] Personal service was made on the husband in hand in Massachusetts. The husband defaulted and a capias

---

[2]The judgment of divorce became absolute by operation of law on January 6, 1977.

[3]The appeals are interlocutory and arguably premature. But see part 2, *infra*.

[4]A temporary support order, allowed on January 10, 1975, and requiring that the husband pay $150 to the wife forthwith, $150 in weekly child support, and reasonable medical and dental expenses of the wife and children, generated a complaint for contempt by the wife in February, 1976. The complaint was served on the husband in Massachusetts. An attorney entered an appearance for the husband, and informed the court that the husband had established domicil in New York. The husband was subsequently adjudged to be in contempt of the temporary support order.

[5]The complaint also alleged a failure on the husband's part to pay $425 in counsel fees.

issued on April 7, 1977.[6] The wife, apparently seeking an alternative means of enforcing the judgment, on September 8, 1977, filed a petition in the District Court under G. L. c. 273A, the Massachusetts version of the Uniform Reciprocal Enforcement of Support Act (URESA).[7] A District Court judge determined that the husband was in fact in arrears, and issued a certificate that became the subject of a subsequent hearing in the Cayuga County (New York) Family Court. That court ordered the husband to pay $90 weekly in child support commencing February 4, 1978. The husband made no payments pursuant to this order.

On June 27, 1978, the Cayuga County Family Court, on the husband's application, modified its earlier enforcement order on the ground that the wife had refused to comply with the provisions of the Massachusetts divorce judgment that authorized visitation with the children. The New York court ordered that the husband was, at his expense, to be afforded visitation rights for the month of August, 1978; otherwise, support payments would be suspended until the wife complied. Thereafter, following a hearing on January 15, 1979, that court suspended its payment order altogether retroactive to August 15, 1978, "until such time as the [wife] shall permit the [husband] visitation with . . . his children, upon reasonable request and advance notice made by him to her." There is no evidence that the husband had any visits with the children subsequent to this order, nor any indication of the reasons therefor.

On December 28, 1988, almost ten years after the last court order in the case, the parties' youngest child reached majority.[8] On October 24, 2004, the husband's father died, leaving him a

___

[6]While the wife's contempt proceeding was pending, the husband filed a complaint for modification on the ground of changed financial circumstances. The wife filed an answer, and the husband did not pursue his complaint.

[7]URESA authorized an "initiating [S]tate" that had created a support obligation to petition a "responding [S]tate" where the obligor was domiciled to obtain jurisdiction over the obligor for the purpose of ordering compliance with the initiating State's support order. See G. L. c. 273A, §§ 1, 8, inserted by St. 1954, c. 556, § 1. URESA was repealed in 1995, see St. 1995, c. 5, § 105, and replaced by G. L. c. 209D, the Massachusetts version of the Uniform Interstate Family Support Act (see St. 1995, c. 5, § 87).

[8]The divorce judgment was silent as to whether the youngest child's emancipation would be tolled by full-time college attendance, and the mother

substantial inheritance. Four days later, the wife filed the complaint for contempt which is the subject of this proceeding. The complaint was served on the husband in hand "at his temporary residence of the Holiday Inn, 707 So. Washington Street, North Attleboro, Bristol County, Massachusetts." The complaint sought arrears in child support in the amount of $65,780, and arrears in alimony in the amount of $73,650 through October 26, 2004.[9] As we have indicated, the motion judge dismissed the portion of the complaint that seeks child support arrearages, while refusing to dismiss the claim for alimony.

2. *Interlocutory appeals.* We commence the discussion with resolution of the question whether these appeals should be considered at this stage of the case at all. Because the judge did not dismiss the wife's complaint altogether and the alimony claim remains to be tried, no final judgment has entered. In addition, there has been no separate final judgment with respect to the dismissal of the child support claim. See Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974). Accordingly, the rulings from which the parties have appealed are interlocutory and are not ripe for appeal. See *Harrison v. Roncone*, 447 Mass. 1001, 1001-1002 (2006).

However, there are occasions on which we have exercised discretion to entertain an appeal even though it is not here as of right. See *McCarthy v. Civil Serv. Commn.*, 32 Mass. App. Ct. 166, 169 n.5 (1992); *Smith v. Arbella Mut. Ins. Co.*, 49 Mass. App. Ct. 53, 54 (2000). In the present case, the issues have been briefed and argued, cases point in different directions, and little is gained by requiring that the parties return at a later date to engage in essentially the same appeal. Furthermore, in light of our disposition of the case, deferral would result in two separate hearings in the Probate and Family Court: one now to determine alimony amounts; another after remand to calculate

never sought to modify the judgment to so provide. Accordingly, apart from the question of enforcement of unpaid amounts, the husband's child support obligation ended on December 28, 1988.

[9]In an affidavit filed in support of her motion for a writ of attachment filed in connection with the contempt action, the wife stated the amounts owed through January 25, 2005, were $72,230 in alimony and $77,223 in child support.

child support arrearages. We see no gain from the viewpoint of judicial efficiency, see *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1, 3 (1987), in insisting on the interlocutory appeal restriction, and we are prepared to treat the issues on the merits.[10]

3. *Child support.* In dismissing the wife's child support claim for lack of personal jurisdiction over the husband, the judge relied on our decision in *Heider* v. *Heider*, 34 Mass. App. Ct. at 636-637. In that case, a wife sought to enforce a 1974 child support order by means of a complaint filed in the Probate and Family Court in 1988. The couple's children had attained their majority by some time in 1980. The wife purported to serve the husband, who had not lived in Massachusetts since 1973, pursuant to the long-arm statute, G. L. c. 223A, § 3. The motion judge denied the husband's motion to dismiss for lack of personal jurisdiction, and we reversed. *Id.* at 635.

Concluding that neither § 3(*a*) nor § 3(*g*) of G. L. c. 223A was applicable, we considered the possibility of jurisdiction under G. L. c. 223A, § 3(*h*). That section provides that a court may exercise personal jurisdiction over a nonresident who is an obligor under a court order for child support or maintenance (assuming that he had previously been subject to that court's jurisdiction), "notwithstanding the subsequent departure of the defendant from the commonwealth, where the plaintiff and the child continue to reside within the commonwealth and where such plaintiff is pursuing an action involving modifications of such order or the enforcement thereof."[11] General Laws c. 223A is "retrospective in operation," *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. 680, 684 (1970), and applies to causes of action that have accrued prior to its enactment. It ensures that the Probate and Family Court will have continuing jurisdiction over nonresident parties so that ongoing support obligations may be enforced. See *Heider* v. *Heider, supra* at 636.

We determined, however, that application of § 3(*h*) to past

---

[10]We emphasize that our determination to entertain the present appeal reflects an exercise of our discretion, and that there is no *right* to seek or obtain appellate review in the circumstances of the case. It remains our policy to discourage piecemeal review. See *Long* v. *Wickett*, 50 Mass. App. Ct. 380, 385-390 (2000).

[11]The quotation is from G. L. c. 223A, § 3(*h*), as amended by St. 1987, c. 100, prior to its amendment by St. 1993, c. 460, § 86.

support orders could not be unlimited, and that jurisdiction over a nonresident obligor could not be maintained for an extended period beyond termination of the obligor's responsibility under the support order in question. *Id.* at 636-637. In the case of child support, that responsibility ceases, with certain exceptions, when the child attains the age of majority. While "[t]he continuing nature of the obligation requires that the right to seek its enforcement also continue beyond the attainment of majority for a period reasonable in the circumstances of the particular case," *ibid.*, we concluded that the period of eight years that elapsed between the time the children attained majority and the filing of the wife's complaint well exceeded "the outermost limits of a reasonable period." *Id.* at 637. Applying this criterion, the motion judge in the instant case understandably ruled that, where sixteen years had elapsed between the children's attaining majority and the filing of the wife's complaint for contempt, personal jurisdiction over the nonresident husband could not be asserted.

The wife distinguishes *Heider* because service on the nonresident husband in that case was effected pursuant to the long-arm statute. In contrast, she argues, she made service on the husband in hand within the Commonwealth. Thus, her argument continues, jurisdiction is conferred on the Massachusetts court by virtue of G. L. c. 209D, § 2-201, and the prohibition in *Heider* against an excessive reach backward under the long-arm statute is inapplicable.

General Laws c. 209D, adopted in 1995 as the Massachusetts version of the Uniform Interstate Family Support Act (UIFSA), see note 7, *supra*, provides "for the exercise of continuing, exclusive jurisdiction by one tribunal over support orders." *Child Support Enforcement Div. of Alaska* v. *Brenckle*, 424 Mass. 214, 218 (1997) (*Brenckle*). A replacement for the earlier support enforcement provisions of URESA, UIFSA provides, in § 2-201, that, "[i]n a proceeding to . . . enforce . . . a support order . . . , a tribunal of the commonwealth may exercise personal jurisdiction over a nonresident individual . . . pursuant to the provisions of chapter two hundred and twenty-three A or under this section. Personal jurisdiction may be exercised under this chapter if: (1) the individual is personally served with a

notice within the commonwealth." The wife relies on this language in asserting that, because the husband was in fact served personally within the Commonwealth, the court had jurisdiction notwithstanding *Heider* (which, she argues, applies only to service under the long-arm statute).

The wife's position seems to us correct. General Laws c. 209D, § 2-201(1), does indeed confer jurisdiction in enforcement proceedings where the obligor is served personally within the Commonwealth, thus creating a statutory basis for jurisdiction apart from the long-arm statute. Likewise, the section is intended to operate retrospectively. See *Brenckle*, *supra* at 220. The reservation expressed by the court in *Brenckle* that "there are limitations to the extent to which even procedural or remedial statutes will operate retroactively," *ibid.*, relates to the phase of an existing proceeding to which the retroactive remedy may apply. See *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 628 (1974) (remedial statutes deemed to apply retroactively to pending cases that have not gone beyond procedural stage to which statute pertains). We do not read that reservation as suggesting that the backward jurisdictional reach of G. L. c. 209D, § 2-201(1), is in any way limited.

It is, in any event, unnecessary to resolve the question definitively because we conclude that the wife in the present case prevails for a different reason. By St. 1987, c. 714, § 1, the Massachusetts Legislature enacted G. L. c. 119A, § 13(*a*), providing in part that "[a]ny payment or installment of support under any child support order issued by any court of this commonwealth . . . shall be on and after the date it is due, a judgment by operation of law, with the full force, effect and attributes of a judgment of this commonwealth including the ability to be enforced."[12] The section was amended subsequently to provide that a judicial or administrative action to enforce such a judgment may be commenced at any time. See St. 1998, c. 64, § 161. The section further provides that a judgment of

[12]General Laws c. 119A, § 13(*a*), which declares child support orders to be judgments, was approved on January 12, 1988, taking effect ninety days thereafter. See *Vittands* v. *Sudduth*, 41 Mass. App. Ct. 515, 518-519 (1996). The complaint for enforcement considered in *Heider* was filed in 1988. *Heider* applies the law in effect prior to the adoption of § 13(*a*).

this nature shall not be modified retroactively except with respect to a period during which the adverse party has notice of the modification complaint.

Accordingly, G. L. c. 119A, § 13(*a*), converts each payment of ordered child support that the obligor fails to make into a judgment enforceable as any other judgment. See *Quinn* v. *Quinn*, 49 Mass. App. Ct. 144, 147 (2000) ("Under § 13(*a*), an action to enforce a child support order takes on the semblance of an action on a judgment"). Because § 13(*a*) does not by itself create an obligation, but rather provides a procedure for the enforcement of an obligation that already exists, it is remedial and may be applied retroactively. See *Hein-Werner Corp.* v. *Jackson Indus., Inc.*, 364 Mass. 523, 525 (1974). See also *Brenckle*, *supra* at 225 n.20, where the Supreme Judicial Court concluded that delinquent payments dating from 1979, nine years prior to the passage of § 13(*a*), nonetheless generated a judgment by operation of law. The status of a judgment is thus conferred on the child support order irrespective of whether the order was entered prior or subsequent to the enactment of § 13(*a*).

Thus, effectively new judgments arise on each occasion on which the obligor fails to satisfy a child support order. Such judgments are subject to a twenty-year statute of limitations. See G. L. c. 260, § 20, providing that "[a] judgment or decree of a court of record of the United States or of any state thereof shall be presumed to be paid and satisfied at the expiration of twenty years after it was rendered." See also *Haynes* v. *Blanchard*, 194 Mass. 244, 246 (1907). The statute does not create a bar to suit, but rather a rebuttable presumption that the judgment has been paid. See *Brown* v. *Greenlow*, 330 Mass. 88, 90 (1953). In addition, the twenty-year statute of limitations will be tolled under G. L. c. 260, § 9, where the obligee demonstrates that the obligor resided outside of the Commonwealth when the cause of action accrued (in this case, when he failed to make a required child support payment). See *Ford* v. *Rogovin*, 289 Mass. 549, 553 (1935). "Because [the husband's] failure to make child support payments became vested as judgments by operation of law, the defense of laches is not available to him." *Brenckle*, *supra* at 225, citing *Capone* v. *Caponi*, 350 Mass. 766 (1966).

Accordingly, we are of the view that developments in the law governing child support enforcement have rendered the analysis in our *Heider* decision obsolete. By the adoption of G. L. c. 119A, § 13(*a*), the Legislature has established that child support orders are to remain enforceable for the purpose of collecting delinquent amounts notwithstanding that the order has expired because the child has attained majority. This is consistent with the articulated public policy of the Commonwealth that "dependent children shall be maintained, as completely as possible, from the resources of their parents." G. L. c. 119A, § 1, inserted by St. 1987, c. 490, § 13. See *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 446 (2000). "We decline to hold that a child forfeits the protection of one parent because the custodial parent does not take immediate measures to enforce delinquent child support obligations." *Brenckle, supra* at 225. With child support orders now enforceable without time constraints other than those imposed by G. L. c. 260, § 20, jurisdiction to implement such enforcement may be obtained either under the long-arm statute, specifically G. L. c. 223A, § 3(*h*), or, as in the present case, under UIFSA, specifically G. L. c. 209D, § 2-201(1) (in-hand service within the Commonwealth). Thus, the problem of asserting jurisdiction to enforce an order that has long since expired that was addressed in *Heider* no longer exists. By virtue of G. L. c. 119A, § 13A(*a*), the obligations in question are present and continuing ones to which jurisdiction may attach.

Our conclusion is not affected by the orders rendered by the Cayuga County Family Court in 1978 and 1979 on the wife's petition under URESA (New York orders). In that proceeding, the New York court first ordered the husband to pay $90 weekly in child support (less than the $110 weekly amount ordered in Massachusetts), and then suspended the order altogether when the wife allegedly deprived the husband of visitation. It is by no means clear that the New York court contemplated actual modifications of the Massachusetts judgment, as opposed merely to establishing the levels at which, and the conditions on which, it was willing to order enforcement. However, the husband has not briefed the question of the effect on the instant proceeding of the New York orders. Likewise, the judge's memorandum of

decision and order makes no mention of the New York case.[13] On appeal, the husband relies almost exclusively on *Heider* and laches. The wife, in addition to her contention that *Heider* is inconsistent with applicable statutes, claims that the New York orders violated Massachusetts law; were entered without statutory authority in New York; and were rendered without her having filed an appearance there. She concludes that the New York orders cannot therefore be granted full faith and credit in Massachusetts. We are unwilling to attempt to determine the significance of the New York orders on this limited record. On remand, the impact, if any, of the New York orders should be addressed.

4. *Alimony.* We agree with the motion judge's decision not to dismiss the wife's complaint to the extent that it seeks enforcement of the husband's obligation to pay alimony. The alimony obligation is ongoing, and thus the statutory basis for the exercise of personal jurisdiction is satisfied. See *Beaulieu* v. *Beaulieu*, 46 Mass. App. Ct. at 852. Nor does maintenance of the proceeding offend "traditional notions of fair play and substantial justice." *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940). *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945). *Mannor* v. *Mannor*, 46 Mass. App. Ct. 46, 50-51 (1998). The husband resided in Massachusetts, married here, and incurred alimony obligations that were reduced to a Mas-

---

[13]At the hearing on the motion to dismiss, the husband's attorney stated:

"I would add . . . that the issue — the ultimate issue of the contempt is in doubt because there is an order from Massachusetts, then there is an order from New York telling my client that he didn't have to pay child support, and I don't want to argue the merits of the case, but just — it isn't a situation where it's agreed that he owes any money. But . . . we filed the motion [to dismiss, arguing that under *Heider* the wife could not meet the jurisdictional requirements to bring a complaint] in hopes that that would make — that would end the case.

". . .

"It was Cayuga County[, New York,] Family Court. The date of the order was . . . July 5th, 1978, modified in the order of January 27th, 1978 [*sic*], and saying payments are suspended. And if this case were to go to trial on the merits, our position would be that's when the payments ended."

sachusetts judgment. "His subsequent and lengthy voluntary departure from the Commonwealth neither attenuates nor eradicates the substantiality of these contacts with Massachusetts." *Beaulieu* v. *Beaulieu, supra* at 852.

The husband attempts to distinguish *Beaulieu* on the ground that the wife in the present case knew that he maintained a second residence in Massachusetts, yet delayed her effort to enforce the alimony judgment for an extended period, while the wife in *Beaulieu* may not have been aware that the husband had relocated to Arizona. We see no merit in the distinction. An alimony obligation is continuous and ongoing. See *Madden* v. *Madden*, 359 Mass. 356, 363 (1971); *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. 113, 117 (1980). For the reasons we have stated, sufficient contacts between the husband and the Commonwealth have been established, and the wife's knowledge of his whereabouts is not a factor. The husband's frequent postjudgment contacts with Massachusetts buttress our conclusion that the exercise of jurisdiction is not unfair.

Apart from his jurisdictional defense, the husband argues that the wife's claim should be barred by the doctrine of laches. We point out that the husband's alimony obligation arises from a judgment that created a continuing and modifiable duty to pay, and that may well not be subject to a laches defense. Furthermore, a party who asserts the defense has the burden, see *G.E.B.* v. *S.R.W.*, 422 Mass. 158, 166 (1996), of proving the presence of an "unjustified, unreasonable and prejudicial delay in raising a claim." *Santagate* v. *Tower*, 64 Mass. App. Ct. 324, 333 (2005). Because ordinarily facts must be proved in connection with an assertion of laches, generally it is not possible to prevail on the defense on a motion to dismiss.

Passing those considerations, it will presumably be difficult in any event for the husband to satisfy the precondition to equitable relief that he arrive at the matter with clean hands. See *Fidelity Mgmt. & Research Co.* v. *Ostrander*, 40 Mass. App. Ct. 195, 200 (1996); *Santagate* v. *Tower, supra* at 334. The defendant was adjudged in contempt on two prior occasions for failure to pay support. He has failed to fulfil his court-ordered obligation to the wife for decades, and now seeks to be relieved

of it altogether. He has admitted to being "financially comfortable," thus eliminating any suggestion that his failures to pay were a product of adverse economic circumstances. His wrongdoing is directly related to the subject matter of the wife's complaint. See *Scattaretico* v. *Puglisi,* 60 Mass. App. Ct. 138, 143 (2003). At a minimum, it was his burden to establish that his failures to pay were, for some reason, excusable.[14]

5. *Conclusion.* That portion of the order that dismissed the wife's complaint for contempt with respect to child support is reversed. The remainder of the order is affirmed. The matter is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*

---

[14]Alternatively, the husband asks that we reject the *Beaulieu* decision, and hold that the principle of *Heider* be made applicable to the enforcement of alimony orders. Given our treatment of the *Heider* decision, it is unnecessary to address the contention.